## STURDY & WIFE ET AL. VS. JACOWAY.

The order of the Probate Court for the sale of the real estate of a deceased person, is a judgment *in rem;* and, being the judgment of a Court of competent jurisdiction, upon a subject within the scope of its legitimate powers, imports a necessity for the sale, and cannot be attacked and held for nought collaterally, upon the ground that the Court erroneously exercised its powers (*Borden et al. vs. State, use, etc.,* 6 *Eng.* 519: *Rogers et al vs. Wilson et al.,* 13 *Ark.* 507): nor can the proceedings and sale, under such judgment or order, when reported to and confirmed by the Probate Court, be impeached collaterally; nor the title called in question for any omission in obtaining the order of sale, or other irregularity.

When the lands of a decedent are sold under and in pursuance of the judgment of the Probate Court, the sale vests the legal title in the purchaser; and no advantage could be taken, by the heirs, of any defect in the deed of conveyance.

Where the time, place and manner of the sale, terms of payment, etc., are fixed by the order of the Probate Court directing the sale of lands, there is no such special personal confidence reposed in the judgment and discretion of the administrator as would affect the legality of the sale if superintended and conducted by an attorney in fact, appointed by him.

*Appeal from the Circuit Court of Yell County.*

The Hon. JOHN J. CLENDENIN, Circuit Judge.

TEBBETTS, and WALKER & GREEN, for the appellants.

*The jurisdiction of the Court whose proceedings are relied upon to establish a right, may be enquired into in every other court.* This principle is well established, and but few authorities are necessary to support it.   In *Williamson et al. vs. Berry*, 8 *How. S. C. Rep.* 540, Mr. Justice WAYNE, in delivering the opinion of the Court, said: "It is a well settled rule in jurisprudence, that the jurisdiction of any Court, exercising authority over a subject may be enquired into in every other Court, when the proceedings in the former are relied upon, and brought before the latter, by a party claiming the benefit of such proceedings.   The rule prevails, whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of States.   This Court applied it as early as the year 1794, in the case of *Glass et al. vs. Sloop Betsey*, 3 *Dall.* 7.   Again, in 1808, in the case of *Rose vs. Himely*, 4 *Cranch* 241.   Afterwards, in 1828, in *Elliott vs. Piersol*, 1 *Peters* 328.   This Court announced the same principle in *Wilcox vs. Jackson*, 13 *Peters* 499, and twice since in the second and third volumes of Howards Supreme Court Reports.   *Schriver's Lessee as. Lynn et al.*, 2 *How.* 59; *Lessee of Hickey vs. Stewart et al.*, 3 *How.* 750.   The same principle was afterwards announced by that Court in *Webster vs. Reid*, (11 *How.* 460,) and in *Harris vs. Hardeman*, (14 *Ib.* 339.)

*The Probate Court is an Inferior Court of limited jurisdiction.*

The Constitution provides that the Probate Court shall "have *such jurisdiction in matters relative to the estates of deceased persons, executors, administrators and guardians, as may be prescribed by law, until otherwise directed by the General Assembly.*"   The *5th sec. of the 48th chap. of the Digest*, prescribes certain

special powers; but there is no clause in the statute or consti-
tution investing it with general powers.

In their notes to *Phillips on Evidence*, Cowen and Hill say:
" Such Courts" (the Court of Surrogate, Judge of Probate,. the
Orphan's Court, Ordinary, or of whatever name, coming in the
place of the English ecclesiastical Court) " are, in this country,
of course, creatures of the Statute, or of special constitutional
enactment. The general adoption of the common law would
not bring them in upon us, for want of a hierarchy furnishing
the appropriate officers and machinery for the action of an
ecclesiastical forum. Their powers are defined in the same
way; and hence they are treated as special, limited and inferior
jurisdictions, in pleading whose decrees, a concurrence of cir-
cumstances must be set forth, indicating that. they have acted
within the scope of their specific powers; and the same princi-
ple will, of course, call for all that strictness of proof neces-
sary to give them jurisdiction." Citing 14 *Johns. Rep.* 430;
*Dakin vs. Hudson*, 6 *Cow.* 221; *Smith vs. Rice*, 11 *Mass. Rep.*
507, 512; *Hunt vs. Hapgood*, 4 *Mass.* 117; 1 *Mill. Lou. Rep.*
99, 100; 4 *Wend.* 436; 12 *Ib.* 533; *Pr Kent. C.* in *Morers vs.
White*, 6 *John. Ch. Rep.* 381, 382, 385, 386; 1 *Conn.*; 1 *Day
McPherson vs. Cunliff*, 11 *Serg. & Rawle* 422, 429; 7 *Ib.* 166;
*Thompson vs. Tolmie*, 2 *Peter* 151; 14 *Serg. & Rawle*, 181, 184;
2 *Wash. C. C. Rep.* 475; *Ford vs. Walworth*, 15 *Wend.* 449;
and various other authorities. (See *Cow. & Hill's notes to Phil.
on Ev.*, note 620, *p.* 862.)

The Orphans Courts are limited in their jurisdiction, and
have no power not expressly given them by law. 9 *Gill.* 90.

The jurisdiction of a County Court, as a Court of Probate,
is confined by the Constitution, and the law, and its authority
is restricted to the enumerated subjects. 6 *Texas* 185.

Surrogate Courts are courts of special jurisdiction, and can
only exercise such powers as are given them by statute. 10
*Barber Sup. Ct.* 523.

The rule in respect to courts of *general jurisdiction* is, that
they are presumed to have jurisdiction until the contrary clearly

appears (*Cow. & Hill's notes to Phil. on Ev., note* 637). But in respect to courts of *limited and special jurisdiction,* the rule is different; nothing is presumed in their favor so far as respects jurisdiction; and the party seeking to avail himself of their judgments, must show that they had jurisdiction affirmatively. *Ib.* 906; 19 *John.* 33; 9 *Mood.* 95; 2 *Wills.* 16; *Peacock vs. Bell,* 1 *Saund.* 73, 74; *Kemp's Lessee vs. Kenedy,* 5 *Cranch* 173; 1 *Peters C. C. Rep.* 30; 8 *Cowen* 311.

*Where a Superior Court of general jurisdiction has special authority conferred upon it by the statute, it is quoad hoc an inferior or limited court; and it is essential to the validity of its proceedings, that they show a substantial compliance with the requisitions of the statute.* See *Cow. & Hill's notes to Phil. on Ev., note* 691, *p.* 496, and the numerous authorities there cited. In *Deming vs. Corwin,* 11 *Wend.* 64, there was a judgment in partition; and because it did not appear by the record, that the parties were before the Court, or shown to the Court that the owners were unknown, it was held to be void. The Court in this case was one of *general jurisdiction.*

In *Brown vs. Wood,* 6 *J. J. Marsh.* 11, 14, 29, 30, 193, 197, the same principles were applied. The Court said that statutes authorizing proceedings against absent defendants and unknown heirs upon constructive notice by publication, is an extraordinary remedy, unknown to the common law, and must be strictly pursued.

In *Bloom vs. Burdick,* 1 *Hill* (*N. Y.*) 141, the Court say that " in every forum in which the question has arisen, it has been held, that a statute authority by which a man may be deprived of his estate must be strictly pursued." The same doctrine will be found in 13 *Wend.* 465; 20 *Ib.* 241; and in 7 *Ib.*, as cited in 1 *Hill* 141. In the case in 1 *Hill*, the decision in *Denning vs. Corwin,* 11 *Wend.*, is restricted to the facts before the Court. The broad doctrine, that the judgment of a Superior Court, in summary proceedings, where it exercises an extraordinary power under a special statute prescribing its course, is void, if the

record do not show jurisdiction. (See *Foot vs. Stephens*, 17 *Wend.* 483, *and Hart vs. Seixas*, 21 *Wend.* 40.)

C. J. SAVAGE, in *Jackson vs. Esty*, (7 *Wend.* 148,) said: " It is a cardinal principle, that a man shall not be divested of his property but by his own acts, or the operation of law; and where proceedings are instituted to change the title to real estate by operation of law, the requirements of the law under which the proceedings are had must be strictly pursued." And " when lands are to be taken under a statute authority, *in derogation of the common law, every requisite of the statute having the semblance of benefit to the owner must be strictly complied with.*" *Sharp vs. Johnson*, 4 *Hill* (*N. Y.*) 99; *Atkins vs. Kinnan*, 20 *Wend.* 241.

The same principles have been fully sustained in the Supreme Court of the United States. See *Thatcher vs. Powell*, 9 *Wheat.* 119; *Williamson vs. Berry*, 8 *How.* 495; *Shriver's Lessee vs. Lynn et al.* 2 *How.* 57; 11 *How.* 437; 7 *How.* 181.

*The order of the Probate Court is coram non judice and void.* First, because the court has no jurisdiction of the subject matter. See *Sec.* 146, *ch.* 4 *Dig.*; *sec.* 148 *Ib.*; *sec.* 154 *Ib.*

So far from showing that the Court had jurisdiction of the subject matter, the proceedings affirmatively show that it did not. They show that the sale was not necessary to pay the debts, that there was no debt allowed against the estate—and the facts stated in the petition furnished no data by which the Court court have determined how much of the land should be sold.

A sale by an administrator unless for the payment of debts is absolutely void. 1 *Sm. & Marsh.* 208.

A sale of the real estate of a deceased person must be made in strict compliance with the law, or it will be void. 2 *Sm. & Marsh.* 326.

In proving a surrogate's or other probate sale of real estate, you must show a petition and *account.* 4 *Wend.* 436; 12 *Wend.* 54; 6 *Johns. Ch. Rep.* 381, 2, 385–6; 1 *Conn. Rep.* 467. *And a recital of the presentation of the account in surrogate's order of*

*sale is not sufficient.* The fact of its having been presented must be affirmatively shown. (*Ford vs. Walsworth,* 15 *Wend.* 449.

It is essential to the validity of an order of the Probate Court for the sale of lands by an executor or administrator, that it should show on its face the facts requisite as preliminary to the making of the order, that is—that the debts and charges allowed exceed the personal estate. *Wattlers vs. Hyde,* 9 *Conn.* 10; *Griffin vs. Pratt,* 3 *Ib.* 513; *Lockwood vs. Sturdevant,* 6 *Ib.* 373; *Watson vs. Watson,* 10 *Ib.* 77; *Burnett vs. Higgins,* 4 *Dana* 567; *Griffith vs. Dickens, Ib.* 655; 7 *Mass.* 488; 11 *Ib.* 227; 1 *How.* (*Miss.*) *Rep.* 558; 2 *Sm. & Marsh.* 357; 3 *Stew. & Port.* 355; 15 *Ala.* 761; 8 *Geo.* 236; 10 *Humph.* 610; 13 *Ill. Rep.* 127.

*Secondly,* because no notice was given of the intended application.

The recital in the order that *notifications* had been given according to law, is not sufficient. *Brodie vs. Skelton,* 6 *Eng.* 150; *Green's heirs vs. Breckenridge's heirs,* 4 *Monroe* 544; *Peers vs. Carter's heirs,* 4 *Litt.* 228; *Dunning vs. Corwin,* 21 *Wend.* 647; 8 *Cow.* 361, 370; *Davis vs. Nest,* 6 *Carr. & Payne* 167; *Planters Bank vs. Johnson,* 7 *S. & M.* 449; *Clements vs. Henderson,* 4 *Geo.* 148.

An order of the Court of Probate for the sale of lands to pay debts without notice, is void. *Corwin vs. Merritt,* 2 *Barb. Sup. Ct.* 341; 11 *Wend.* 652; *Seymour vs. Judd,* 2 *Comstock* (*N. Y.*) 464.

If an administrator sell the lands of his intestate under an order of the Probate Court, where the record does not show that *legal* notice had been given, both the order and sale are void. *Gwinn vs. McCarrol,* 1 *Sm. & Marsh.* 351; *Campbell vs. Brown,* 6 *How.* (*Miss.*) 230. " A decree of the Probate Court, without notice, actual or constructive, to the heirs, is void and inoperative; such decree is not only against the express provisions of the statute, *but opposed to the first principles of justice."* Without citation or notice, the Court had no jurisdiction of the person; and without jurisdiction as well of the person as of

the subject matter, the judgment of a court is void, and may be collaterally assailed; 6 *How.* (*Miss.*) 114, citing 4 *Peters U. S.* 474; 11 *Wend.* 652; 5 *Stew.* (*Ala.*) 335, and *J. J. Marsh.* 105. In such case, the title continues in the heir. If the statute has not been strictly complied with, the order and sale under it are void. A recital of notices in the order is insufficient. *Planters Bank vs. Johnson,* 7 *S. & M.* 449; *Clements vs. Henderson* 4 *Geo.* 148; *Estes vs. Johnson,* 10 *Humph.* 223; *Whitman vs. Johnson,* *Ib.* 610; 14 *How.* (*U. S.*) *Rep.* 339; 11 *Ib.* 460; 5 *Blackf.* 223; 9 *Mass.* 464; 20 *Verm.* 65; 6 *Conn.* 508; 15 *Ohio* 444; 11 *N. Hump.* 191; 9 *Geo.* 247, 130; 1 *S. & Mar.* 140; 12 *Mo.* 580; 6 *Yerg.* 222; 8 *B. Mon.* 139; 1 *Dev.* 187; 14 *Leigh* 584; 2 *Stew.* 335; *Curtis vs. Gibbs Pa. Rep.* 405.

*The sale was void because made by an agent*

The statute requires the executor or administrator making the sale to make a report of his proceedings, at the next term after the sale, together with an affidavit that he was not the purchaser of such lands or tenements, or any part thereof, and that they were not purchased for his use, and that he is not in any manner interested in the purchase thereof; (*sec.* 151 *chap.* 4 *Digest.*) If the Legislature had contemplated the execution of the orders by attorney, it is supposed that it would have required the attoney to make the affidavit!

A bare power or authority to do an act, cannot be delegated, for the reason that such power or authority is a trust or confidence reposed in the person in whom it is vested. *Bacon's Abr. Authority D.; Com. Dig. Attorney, C.* 3; 2 *Kent's Com.* 633; *Story on Agency* 14.

When a power of sale is given to executors, they cannot sell by attorney. *Williams on Executors* 618; *Sugden on Powers;* 4*th ed.* 177; *Bacon's Abr. title Authority, D. p.* 43; *Lyon vs. Jerome,* 26 *Wend.* 485.

*The deed from Harrell, the attorney in fact of White, the administrator, is inoperative and void.*

First, because it is the deed of Harrell, the attorney, and not the deed of the administrator.

Secondly, because it does not recite the proceedings.

Thirdly, because it shows upon its face that the sale was illegal and void.

When any one has authority as attorney, to do any act, he ought to do it in his name who gives the authority, for he appoints the attorney to be in his place, and to represent his person; and therefore, the attorney cannot do it in his own name, nor as his proper act; but in the name, and as the act of him who gives the authority." This rule, thus laid down, is regularly true in regard to all instruments under seal. Therefore, if a person is authorized by a power of attorney to make a conveyance, under seal, of the lands of the principal, and he makes the conveyance by deed in his own name, it will be a void conveyance. And it will make no difference in the case, that in the deed, the agent describes himself as such, as if he says, " *know all men by these presents, that I, A. B., as agent of C. D., do hereby grant, sell, convey, etc.; or signs and seals it, 'A. B. for C. D.,'* for in such case, it is still his own deed, and not the deed of the principal." (*Story on Agency, secs.* 147, 148.) That is precisely the case with the deed here. See, also, 2 *Lord Raym.* 1418; 2 *East.* 142; *Bacon's Abr. title Leases,* 1 *Sec.*; 10 *Com. Dig. title Atto. C.* 14; 10 *Wend.* 87; 6 *John.* 94; 9 *Ib.* 334; 2 *Kent's Com.* 631; 5 *Peters* 349, 351; 4 *Mass.* 505.

WATKINS & GALLAGHER, and CUMMINS & GARLAND, for the appellees.

It appears to us to be a matter of little importance how *inferior* the Probate Courts may be, or how limited their jurisdiction generally, if they have had dignity and jurisdiction enough given them here in Arkansas, to do what has been done in this case. The Probate Court in this State, " being not only a Court of record, but a constitutional court of fixed and permanent character, invested with general jurisdiction and plenary powers over the matters committed by law to its peculiar cognizance; and open to superior review by appeal, is to be

regarded as a *superior court.*" *Borden et al. vs. State,* 6 *Eng.* 519.

The Probate Courts were erected by the constitution, and the Legislature authorized to prescribe their jurisdiction. This has been done by giving them the power to order the sale of the lands of a decedent for the payment of debts, if the administrator petitions the Court for such an order.

In the case at bar, it is said that there were no debts; and, therefore, it was not within the jurisdiction of the Court to order a sale of the lands.

We can confidently point to the record as exhibiting a full compliance on the part of the administrator, with all the requirements of the statute, necessary to give the Court jurisdiction in this case, even if the letter of the law is to be the rule. These requirements are, that the administrator apply:

" By petition, describing the lands, and containing a just and true account of all the debts of the intestate which shall have come to his knowledge, and the amount of the assets in his hands to pay such claims." *Rev. Slat.,* ch. 4, *sec.* 146.

Could there be a stricter compliance with the statute than is here shown? Here are the petition, the lands, the debts and the assets; and all in the form, and authenticated as prescribed by law.

This, we contend, is conclusive of the whole matter; for, under the law, it was on *the pres ntation of the petition* to the Probate Court, that jurisdiction in the matter of the sale of the land attached, or arose; [6 *Port.* 234] and from that point forth, its action is valid, and all rights accruing thereby are secure.

" The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action." 6 *Peters* 709.

In this case, jurisdiction attaches on the decease of any person indebted beyond the personal estate he leaves, and when jurisdiction is once attached to a subject, or exists over a person, this Court has adopted a rule applicable to all courts of record, that their decisions are conclusive. 2 *How.* 343. This

judgment, whether correct or otherwise, until reversed, is binding on every other Court. 1 *Peters* 340.

See *Bostwick vs. Adams*, 3 *Comstock*, to the effect that the filing of the petition gives jurisdiction. When jurisdiction is thus once obtained, all presumptions are in favor of the regularity and validity of subsequent proceedings. Purchasers have only to look to the order of sale. See, also, 19 *How.* (*U. S.*) *Rep.* 69.

The fact that the record shows that the petition was filed and that the order was made, is conclusive.

The law presumes that the petition contained the necessary statements to justify the action of the Court. 14 *Peters* 458.

It is enough that the record shows that the matter was before the Court, and that they acted upon it. 2 *Peters* 165.

The power to hear and determine a cause is jurisdiction, it is *coram judice* whenever a case is presented which brings this power into action. 6 *Peters* 709.

It is not necessary that a full and perfect account should appear in the records of the contents of papers on file, or the judgment of the Court on matters preliminary to a final order. It is enough that there be something of record, which shows the subject matter before the Court and their action upon it. That their judicial power arose, and was exercised by a definitive order or sentence. *Thompson vs. Tolmie*, 2 *Peters* 165.

The granting the license to sell is an adjudication upon all facts necessary to give jurisdiction, and whether they *existed or not, is wholly immaterial*. It is conclusive on all whom it concerns. The record is absolute verity. It can be impeached only by fraud in the party who obtains it. A purchaser is not bound to look beyond the decree, even if the Court which rendered it have in the exercise of their jurisdiction disregarded, misconstrued, or disobeyed the plain provisions of the law, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error.

The license was granted by a Court having jurisdiction of the subject: if it was improvidently exercised, or in a manner not warranted by the evidence before the Probate Court, yet it

is not to be corrected at the expense of the purchaser who had a right to rely on the order of the Court as an authority emanating from a Court of competent jurisdiction. *Grignon's Lessee vs. Astor et al.*, 2 *How. U. S. Rep.* 319, citing 6 *Peter's* 729; 3 *Ib.* 205; 2 *Ib.* 169; 11 *Mass.* 227; *Gelston vs. Hoyt*, 3 *Wheaton* 246; *Bennett vs. Owen*, 13 *Ark.* 177; 6 *Port.* 219.

A petition, though not specifying the particclar causes which under the statute would authorize a sale, is sufficient. Nor is it necessary to support the jurisdiction of the Court that the evidence authorizing the sale should appear on the record. *Doe vs. Wise*, 5 *Blackf.* 402; *Grignon's Lessce vs. Astor et al.*, 2 *How.* 319; *Rogers et al. vs. Wilson et al.*, 13 *Ark.* 507; 2 *Wash. C. C. R.* 475; 4 *Ib.* 657; 14 *S. & R.* 184; 1 *Harring.* 486, 548; 17 *Miss.* 507.

An order of the Court of Ordinary, directing the sale of lands belonging to the estate, is a judgment of a Court of competent jurisdiction, and cannot be attacked and impeached collaterally, by an heir claiming lands. *McDale vs. Bunch*, 7 *Geo.* 559. The remedy of the heirs is by appeal from such judgment, or by proceedings in chancery. *Ib.* See also, 4 *Foster* 120, 517; 13 *Geo.* 1; 25 *Miss.* 31.

Notice *was given*, as the following extract from the order of sale will show:

"And it further appearing that notifications have been given as required by law, and the Court being fully advised what order to make," etc. (*See Transcript.*)

But if there was nothing of this in the record, the presumption is that notice was given.

These provisions (requiring notice) do not affect the jurisdiction of the Court, they apply only to its exercise. After the Court has passed on the representation of the administrator, the law presumes that it was accompanied by what was requisite to the action of the Court. The order of sale is evidence of any fact which was necessary to give them power to make it; and the same remark applies to the order to give notice to the parties. 2 *Howard* 340.

Order of sale without notice, though erroneous, not void. *Rogers vs. Wilson*, 13 *Ark.* 107.

The Court will presume notice, though the record does not show it. 17 *Mass. R.* 68.

The act requiring notice does not limit the *jurisdiction* of the Court. It is *merely directory*. 13 *Geo.* 1.

A want of sufficient notice of a sale by an administrator, renders the sale voidable only, not void. And such sale cannot be attacked collaterally. *McNair vs. Hunt*, 5 *Miss.* 300.

The proceeding is *in rem*, plenary jurisdiction is vested in the Court over the thing, though the party in interest is not notified of the proceeding. *Ib.*

The sale by attorney is good; because the rule is, that it is only in those cases where the power reposes a personal trust and confidence in the donee of it, to exercise his own *judgment and discretion*, that he cannot delegate it. Here there is no reason why the administrator should have been present at the sale. The time and manner of sale, and the terms of payment, were all fixed by the order; and the sale could as well be effected by an agent of the administrator, as by him in person.

" The whole current of authorities shows *not* that the donee of a power cannot in any case execute a deed of appointment by attorney; but that he cannot do so where by the nature of his appointment a special confidence is reposed in his discretion. He cannot transfer the discretion to another.

*Heirs of Piatt vs. Heirs of McCollough*, 1 *McLean R.* 69; *Lyon vs. Jerome*, 26 *Wend.* 485; *Mackey, et al. vs. Coxe*, 18 *Howard*, 104. The case here cited from 18 *Howard*, is deemed by us conclusive on this point.

S. H. HEMPSTEAD, also for the appellees.

Mr. Justice SCOTT, delivered the opinion of the Court.

The action was ejectment for several tracts of land contiguous. The plea was, not guilty. The verdict and judgment were for the appellee. The appellants are the children and

heirs at law of James Wilson, dec'd, who departed this life in the year 1845, in the State of Missouri, where he resided, and left real and personal estates at his death. The lands in controversy seem to have been the only property owned by him in Arkansas. Lemuel B. Harrell administered upon his estate in Missouri. Phineas H. White administered upon his estate in Arkansas. The latter procured an order of the Probate Court of Yell county, where the land was situated, for its sale, and it was sold by that authority, and purchased by the appellee, to whom deeds of conveyance were made by White, as administrator, under which the appellee held the possession of the premises. These facts he proved upon the trial, against the objection of the appellants, who, by their counsel, insist, for a multiplicity of supposed reasons spread upon the record by bill of exception and greatly amplified in argument, that the entire proceedings in the probate Court, as shown by its record, and all the matters therewith connected, touching the sale and purchase of the lands, set up by the appellee, were utterly void.

These proceedings consist of the sworn petition of White as administrator, also sworn to by a disinterested third person, stating, in reference to the administration in Missouri, that that was " still progressing and unsettled, and that it (was) the wish of the said administrator in Missouri, and of the heirs and representatives of the said Wilson, that the lands in Yell county, Arkansas, should be sold in preference to the remaining estate of said Wilson in Missouri, to enable said administrator to pay the outstanding debts against said estate, and the expenses of administration," and stating, in reference to the administration in Arkansas, " that there (was) a probability of a demand of some five or six hundred dollars, or more, being allowed against said estate in favor of John Rogers, to pay which and the expenses of administration in Arkansas, there (were) no assets in hand." And after particularly describing the lands, states in reference to them, that otherwise than by a sale, they " cannot under present circumstances be made available to said Wilson's

estate, because said lands are wild, unimproved lands, yielding nothing by way of rent, or otherwise, to said estate: but, on the contrary, are a constant source of expenditure to meet taxes, etc., and that said estate would be benefited by their sale, because it stands greatly in need of the money which would proceed from said sale." " That the prospect for any material increase in the value of the lands was extremely remote—quite too distant to justify the withholding of them from sale on the grounds of any imaginary future benefit to be derived therefrom to the estate, when the same is at this time so much in need of money, and said lands a source of constant expense;" and expressing an unhesitating opinion that the true interest of the estate required the sale, prayed an order of the Court therefor on such terms as the Court might deem proper.

This petition appears to have been filed in the Probate Court at a regular term, and, afterwards, it expressly appears that the Court, in term time, judicially acted upon it; the record of which action, after reciting the substance of the petition, as above set out, proceeds further to recite the verification of the petition both by the administrator, and by the affidavit of Jesse Turner, a disinterested person of known good character, then proceeds as follows, to wit: " And it further appearing that the notifications of this application have been given as required by law, and the Court having been fully advised what order to make in the premises, is of opinion that the prayer of said petition ought to be granted. It is therefore ordered that said administrator, Phineas H. White, proceed to sell said real estate at public vendue, etc.,"—the order proceeding to prescribe explicitly the mode of advertisement, terms of sale, and mode of conducting it, with reference to the statutory regulation for the sale of real estate, and that he report.

At the first regular term after the sale, a report thereof appears to have been made and filed, and to have been approved and confirmed by the Court, in which it appears that the appellee was the purchaser of the land at the average price of one dollar and twenty-eight cents per acre.

It appears, also, that four years afterwards, to wit: in August 1853, at a regular term of the same Court, the administrator made another report of the same sale, in which with greater particularity, the time, place and mode of conducting said sale, and the previous advertisement thereof were stated, and in which it was also stated that all the tracts of land severally sold, brought two thirds of the appraised value thereof, except one eighty acre tract, which brought one cent over two thirds of the appraised value thereof.

This report appears also to have been examined and approved, and in all things confirmed by the Court.

The other matters proven in connection with these proceedings of the Probate Court, and touching the sale and purchase of the lands in controversy, were, 1st. A letter of attorney from White, the Arkansas administrator, to Harrell, the Missouri administrator, authorizing the latter, for and in the name of the former, to superintend and conduct the sale of the lands then before duly advertised, at the time and place appointed, to execute deed to the purchaser, and to " do any other thing necessary to perfect the sale in accordance with the order of Court and the law of the land, as fully in all respects as (he himself) could do if personally present:" 2d. A deed of conveyance, reciting in the *name of White, adm'r,* the order of Court for the sale of the lands, the publication of the notices for the sale, the appointment of Harrell as attorney in fact to superintend the sale, etc., the terms upon which the lands were offered, and the purchase of them by the appellee—the highest bidder therefor; which then proceeds as follows, to wit: " Now therefore know ye, that I Lemuel B. Harrell, attorney in fact as aforesaid of Phineas H. White, administrator of the estate of James Wilson, deceased, by virtue of the power and authority in me vested as aforesaid, and in consideration, etc. * * * do hereby grant, bargain, sell and convey unto the said Benjamin J. Jacoway. etc. And I, the said Lemuel B. Harrell, do hereby covenant with the said Jacoway, that I am fully empowered to make the aforementioned conveyance in the name of P. H. White, as

33

administrator of the estate of James Wilson, dec'd, aforesaid, and for him the said White, I do hereby convey all the interests, to the said Jacoway, his heirs and assigns, in fee simple, that the heirs of the said Wilson may have in and to said several tracts of land, etc. Signed, Phineas H. White, [SEAL,] administrator of James Wilson, dec'd. By L. B. Harrell, attorney in fact." 3d. Another deed of conveyance for the same lands executed by White himself, as administrator, to Jacoway, about four years afterwards, which contains more minute and ample recitals, and is unquestionable, as to the granting clause, and apparently, in every other respect.

The multitudinous questions as to irregularity, to which we have alluded, are presented not only by way of objections to the testimony, but also by way of instructions asked and refused. They are all, however, subordinate to, and are to be disposed of by the determination of a single point of law, or rather, by its application to the leading facts of this case; for perhaps it is too well settled now for any consideration of it as for determination. We mean that establishing the general rule, that the judgment of a Superior Court of competent jurisdiction as to a subject within its jurisdiction, cannot be attacked and impeached collaterally.

Because our Probate Courts received their powers by legislative enactment, in response to the constitutional provision in reference to them, it does not follow that their powers are limited and special, in the sense that the powers of inferior courts were so at common law. The latter derogated from the powers of the courts at Westminster, and were, therefore, strictly construed, upon the same principle that a statute derogating from common right, is still construed strictly. But in our system, judicial power is cotemporaneously parceled out by the constitution among the constitutional courts, ordained and provided for, without, in any sense, derogating from the powers granted to the others. Hence, although all courts of original jurisdiction are limited as to subjects of jurisdiction, their powers, as to the subjects committed to their jurisdiction,

are general powers, as contra-distinguished from the special and limited powers of inferior courts, technically so at the common law, since they in no way derogate from the powers of other courts.

Our Probate Courts, by the constitution, were to " have such jurisdiction in matters relative to the estates of deceased persons," as should be prescribed by law. This jurisdiction is peculiar to these courts, as criminal and chancery jurisdiction is peculiar to other courts, but neither derogates from the powers of the others, and each, within its sphere, is to be considered as invested with full independent powers, respectively, as to the subjects committed to its jurisdiction.

Under our legislation, constitutional and statutory, not only is the personal estate of a deceased person committed to the jurisdiction of these courts, but the entire estate, both real and personal. There are provisions of law relating to the sale of property and estates, while in the course of administration, discriminating not only between real and personal estate in general, but also between particular species of personal property, as well as chattels real. They are all, however, but regulations prescribed by law for the guidance and government of these courts as to these matters, when in the exercise of the peculiar jurisdiction committed to them.

In the exercise of this jurisdiction, as has been often said here, the courts proceed *in rem*. The first step of actual jurisdiction, in this process, is the grant of letters testamentary, or of administration; although a potential jurisdiction over the entire estate of deceased persons vested in these courts at the moment of the death. When this step is taken, a public notice thereof is required to be given within thirty days thereafter. If the deceased died intestate and left no known heirs, a further and additional public notice is to be given. (*Dig.*, *chap.* 4, *p.* 120, *secs.* 54, 55.

Thus, in the very outset, all persons interested in the things to be administered, have due notice in the mode usual in proceedings *in rem*. And there is a peculiarity in our administra-

tion system which makes this general notice more efficacious than in those States where the peculiarity does not exist, although their courts may also proceed *in rem.;* and that is, that process from no other court can take and dispose of the thing while in process of administration, unless it had fastened upon it in the life time of the deceased. This peculiarity exists in several of the States, after the estate is reported to be insolvent; but here, it is so whether the estate be solvent or insolvent, and hence, parties interested in the estate of the deceased person have more especially to look to the proceedings of this court in reference to their interest.

These courts, then, having the peculiar and exclusive jurisdiction of the estates of deceased persons—otherwise than as the chancery courts may exert, in some respects, a concurrent jurisdiction—they must necessarily have jurisdiction of the incidents to the proper exercise of this jurisdiction; and whether upon the one or the other their judgment may be passed, it cannot be a nullity, however erroneous it may be, because within the scope of their legitimate powers. Hence, in *Borden et al. vs. The State*, 6 *Eng. R.* 519, it was held that, jurisdiction of the Probate Court appearing as to the subject matter, any irregularity in its proceedings—as for want of notice—was not a legitimate enquiry in a collateral proceeding, however legitimate it might be upon a direct proceeding as for error.

In the same case, upon the same general principle, it was held that these courts were in all things to be considered upon the footing of superior courts, as contra-distinguished from inferior courts of special and limited jurisdiction at the common law. And this has been often since repeated and enforced in this Court. (*Wm. J. Marr. ex parte*, 7 *Eng. R.* 86; *Bennett et al. vs. Owen et al.*, 13 *Ark. R.* 179; *Rogers et al. vs. Wilson et al.*, 13 *Ark. R.* 569; *Barasien vs. Oden*, 17 *Ark. R.* 124, and *other cases.*)

When these doctrines are applied to the leading facts of this case, it is easy to see, that the proceedings in the Probate Court, and those connected therewith, proven upon the trial, were not

utterly void, although, possibly, in some respects, upon a direct proceeding, they might have been regarded as erroneous.

Without any regard to the statute of 23d December, 1846, and the mode of proceeding thereunder for the sale of real estate by order of the Probate Court; but considered as a proceeding under the law as it existed in the year 1845 (*Dig.*, *ch.* 4, *secs.* 145, 146, *etc.*,) the proceeding was certainly within the scope of the competent powers of the Probate Court, and was in several substantial respects strictly regular, when the legitimate presumptions in favor of the regularity of the proceedings of the Probate Court are indulged.

It was a proceeding by petition of the administrator, verified by his affidavit, for the sale of lands of his intestate for the payment of debts of the intestate and the expenses of administering his estate. It contained what may be considered a true and just account of all the debts of the intestate that had come to his knowledge, and so far as it was possible, the amount of assets in his hands to pay such debts,—which was none at all, with the exception of the land. He described the lands particularly, and showed that nothing could be derived from them by rents, to meet the unpaid debts, the accruing taxes, and the expenses of administration. He stated that besides the debts to be paid in Missouri there was the probability of an Arkansas debt, of an amount equal to what ultimately proved to be about half the market value of the lands. He stated that there was, originally, property in Missouri, both real and personal, that was still in process of administration there, and that it was the wish of the administrator in that State, as well as of the heirs and representatives of the deceased, that the lands in Arkansas should be sold in preference to the "remaining estate in Missouri," to pay the outstanding debts against the estate there, and the expenses of administration. Whether that "remaining estate" in Missouri was real or personal estate, was not stated: And it in no way appears, that there was any personal property whatever remaining any where, much less a sufficiency of such to pay the outstanding debts. The pre

requisite notice of the intended application provided for by the statute (*sec.* 134), appears from the record to have been given, and it also affirmatively appears, that the Court was fully advised, after consideration, as to what order to make in the premises; and, in support of the order, it is to be presumed, the Court heard evidence.

Under such circumstances, to hold that the doings of the Court were a nullity, would be, to say the least of it, going a great way. Here was a subject matter legitimately and peculiarly within the jurisdiction of the Probate Court—an application by an administrator for the sale of lands of his intestate for the payment of his debts—brought regularly before the Court—by sworn petition, after due notice of the intended application shown to the Court—and that application considered and decided upon, and that too with a sufficient margin in the record for presumption that facts were established by evidence, not inconsistent with the petition, to fully authorize the judgment given—without any objection to it in point of correctness, much less of power.

The subsequent proceedings are equally unassailable, in the aspect in which we are considering them—that is, in reference to power and authority, and not as upon error for imperfections there cognizable. It was admitted upon the trial that the lands were duly appraised before they were offered for sale; that they were sold in separate tracts, and that each brought two-thirds of its appraised value. With regard to the sale having been superintended and conducted by an attorney in fact of the administrator, there was no margin for the exercise of any special personal confidence reposed in the judgment and discretion of the administrator, which might forbid it; because here, the time, place and manner of the sale, and terms of payment, and other matters connected therewith, had all been previously fixed by the order of Court, which had but to be executed according to these specific directions—and besides, when this attorney in fact was himself the administrator, of the domicil, of the deceased in Missouri—as he seems to have

been—there is less reason to apprehend fraud, as to any part of the transaction.

With regard to any supposed defects in either of the two deeds, if they existed, it is difficult to see how that could give any right of possession of the lands to the heirs, who had been divested of all such by the sale of them by the administrator, under a valid order of Court, and actual possession in pursuance thereof given to the purchaser.

But the whole case turns, as we have already said, upon the point of law, that the order of sale in this instance being the judgment of a Court of competent jurisdiction upon a subject within the scope of its legitimate powers, that judgment in favor of the sale legally imports a necessity for it, so long as it remains unreversed. and, therefore, it cannot be attacked and held for nought collaterally upon any ground that the Court erroneously exercised its powers. Whether the Court properly or improperly exercised its powers over the subject, is not to be enquired of in this wise. (*Martin's Lessee vs. Roach*, 1 *Harrington R.* 486; *McDade vs. Burch*, 7 *Geo. R.* 559; *Howard & wife vs. Moor & wife*. 3 *Mich. R.* (*Gibbs*) 226, and various other cases cited in brief of appellee's counsel.)

In that view we think there is no error in the record, and the judgment will therefore be affirmed.