5-2375                                    350 S. W. 2d 176

Opinion delivered October 2, 1961.

[Rehearing denied November 6, 1961.]

*Gene Baim* and *John Harris Jones,* for appellant.

*House, Holmes, Butler & Jewell, Henry W. Gregory, Jr., Hillsman Taylor* and *H. Murray Claycomb. Edward L. Wright,* Trustee Ad Litem, for appellee.

ED. F. McFADDIN, Associate Justice. This appeal concerns the Estate of the late Ben J. Altheimer, who

died testate, a resident of Jefferson County, Arkansas, on May 29, 1946; and is a "three-cornered" suit between (a) the Guardian of the incompetent son of the Testator; (b) the Foundation Trustees; and (c) the Testamentary Trustees. The appellant in the present litigation is Elsie J. Selig, co-guardian[1] of the person and estate of Ben J. Altheimer, Jr., an incompetent. In her capacity as co-guardian she is referred to herein as "Intervenor" or "Appellant." The appellees in the present litigation are the "Foundation Trustees," the "Testamentary Trustees," and the "Trustee *ad litem.*" The Trustees of "The Ben J. Altheimer Foundation" are R. S. Barnett, Jr., Frank L. Webb, John N. Stern, and Hillsman Taylor; and they are referred to as "Foundation Trustees." The Trustees of the Will of Mr. Altheimer are Charlotte Mills, Frank G. Bridges, Jr., and Leonard L. Selig; and they are referred to as "Testamentary Trustees." In the course of the litigation it developed that there was some conflict between the individual interest and the trustee interest of some of the Testamentary Trustees. The Court thereupon appointed Edward L. Wright as Trustee *ad litem*[2] to act for the Testamentary Trustees in this litigation; and, in such capacity as Trustee *ad litem,* Edward L. Wright is also an appellee. The present case in this Court is an appeal by the Intervenor from a decree of the Jefferson Chancery Court adverse to her claim; and the Foundation Trustees have cross-appealed to protect their theory of the case.

Mr. Ben J. Altheimer was a citizen of Jefferson County, Arkansas. On April 2, 1942, he executed a Declaration of Trust by which he created "The Ben J. Altheimer Foundation." Both charitable and private purposes were expressed in the Trust instrument. On the same day he attempted to convey to himself, as Trustee for the said Foundation, certain interests in real and personal property; and he also undertook to desig-

---

[1] The other guardian with Elsie J. Selig is R. S. Barnett, Jr., but as co-guardian he did not join in this suit.

[2] In *Selig* v. *Morrison,* 230 Ark. 216, 321 S. W. 2d 769, we affirmed the action of the Chancery Court in appointing Mr. Wright as Trustee *ad litem.*

nate certain persons as Trustees in Succession to himself, and also to name certain persons and organizations to be beneficiaries of the Foundation. On June 2, 1942, Ben J. Altheimer executed his Will,[3] in which he stated that if his previous conveyances to the Foundation should for any reason be deemed insufficient, then he directed that the said Foundation receive one-half interest in all of his property. He also named certain persons as Trustees of the Will, and certain other persons as beneficiaries under the Will.[4] Mr. Altheimer had previously created the Ben J. Altheimer, Jr. Trust for the benefit of his son. But in his Will, Mr. Altheimer provided that his said son would also receive during his lifetime a substantial portion of the net income from the Testamentary Trust.

As aforesaid, Mr. Altheimer died May 29, 1946; John N. Stern qualified as Executor; the Estate was duly administered, and finally closed in the Jefferson Probate Court on September 12, 1950. Ben J. Altheimer, Jr. (hereinafter referred to as "Altheimer Junior") was declared incompetent on July 2, 1946, and still is; and Elsie J. Selig and R. S. Barnett, Jr. are now, and have been at all times since July 2, 1946, the co-guardians of the person and estate of Ben J. Altheimer, Jr. In the course of the administration of the Ben J. Altheimer Estate, questions arose as to what assets belonged to the Altheimer Estate; what assets would go to "The Ben J. Altheimer Foundation;" and whether certain attempted conveyances and gifts by Ben J. Altheimer had been completed. In 1947 the Executor of the Altheimer Estate brought suit against (a) the Trustees of the Foundation; (b) the Trustees of the Will; (c) the

---

[3] In November 1945 Mr. Altheimer executed a Codicil to the Will which changed the name of the previous Executor to that of John N. Stern.

[4] The trust instrument recited in Art. VII, Section 7: "§ 7. The settlor of this trust has provided only a limited life income in this trust for Ben J. Altheimer, Jr., the son of the settlor, by reason of the fact that the said Ben J. Altheimer, Jr. has independent means and has substantial interests in other trusts and estates. It is nevertheless the desire of the settlor that the trustees of this trust shall take unto themselves the responsibility for the well-being of said Ben J. Altheimer, Jr. during his lifetime, and that the trustees shall make it their duty to accord to him their care in his personal well-being and in his financial affairs, with relation to his other interests as well as his interests in this trust."

co-guardians of Ben J. Altheimer, Jr.; and (d) certain other parties. The suit was for construction of the Will of Ben J. Altheimer and a determination as to what properties would belong to the Foundation and what properties would go to other parties. It was Case No. 24988 in the Jefferson Chancery Court, and a decree—subsequently to be discussed in some detail—was rendered by that Court on September 21, 1948, finding that the Foundation was entitled to one-half interest in certain assets. Thereafter, the Estate of Ben J. Altheimer was duly closed in the Jefferson Probate Court on September 12, 1950, as aforesaid.

It was subsequently discovered that the Altheimer Estate owned an interest in some other property, herein referred to as the "Twin City Property." The interest of the Altheimer Estate in this property was unknown to the Foundation, and probably also to the Executor and the Testamentary Trustees, until several years after the 1948 decree. In 1957, the Foundation Trustees brought the present suit against the Testamentary Trustees, seeking to reopen the 1948 decree and have the Chancery Court award to the Foundation Trustees an undivided one-half interest in the Twin City Property as subsequently discovered assets which would pass either under the deed or the will of Altheimer, one-half to the Foundation Trustees, and one-half to the Testamentary Trustees.

Elsie J. Selig, as co-guardian of the person and estate of Ben J. Altheimer, Jr., an incompetent, intervened in the present suit and alleged: (a) that the Foundation was void; (b) that all of the assets of the Ben J. Altheimer Estate held by the Foundation Trustees should be held by the Testamentary Trustees; (c) that the 1948 decree (in Case No. 24988 in the Jefferson Chancery Court) was a consent decree and could not bind the incompetent Altheimer Junior and his Guardians; and (d) that the 1948 decree should be set aside and the Foundation's assets should pass to the Testamentary Trustees so as to result in a substantial benefit to her ward. There was thus presented to the Jefferson Chancery Court in Case No. 31322 (from which comes the

present appeal) a "three-cornered" lawsuit between (a) the Intervenor; (b) the Foundation Trustees; and (c) the Testamentary Trustees; but the bulk of the lawsuit involved the questions raised by the Intervenor against the Foundation Trustees. An enormous record was developed: there are more than two thousand typewritten pages of evidence, and the printed briefs contain hundreds of pages. In deciding the case the learned Chancellor wrote an opinion of forty-five pages, discussing and disposing of every possible contention in the case. It is an erudite opinion and has proved of great value to us.

The trial in the Chancery Court resulted in a decree finding (a) that the Intervenor was not estopped by the 1948 decree; (b) that the Intervenor could question the validity of the Foundation; (c) that the Foundation was valid because the Declaration of Trust creating the Foundation was adopted by reference into the Will of Altheimer; (d) that the Foundation should have received the property that it did receive in the 1948 decree; and (e) that the Foundation Trustees should recover half of the Twin City Property as against the Testamentary Trustees. There was no appeal by the Testamentary Trustees or the Trustee *ad litem;* but the Intervenor has appealed; and the Foundation Trustees have cross-appealed to protect their theory[5] of the case in the event the theory adopted by the Chancery Court should be held erroneous.

The 1948 decree sustained the validity of "The Ben J. Altheimer Foundation"[6] and declared that the Foun-

---

[5] The Foundation Trustees claim: *res judicata,* estoppel, and limitations; that the 1948 decree was not a consent decree; that the Intervenor selected her own counsel to represent her in the 1948 litigation; that the Foundation was a valid *inter vivos* Trust; and that at all events the Declaration of Trust creating the Foundation was incorporated by reference into the Will of Ben J. Altheimer.

[6] The 1948 decree contained this finding: "The Declaration of Trust creating the Ben J. Altheimer Foundation was duly executed by the Testator on April 2, 1942, at which time he also executed a conveyance of the properties intended to be transferred to himself as Trustee for said Foundation, which conveyance was attached to said Trust Declaration and should be considered and construed by the Court along with the provisions of the Trust Declaration; that said Trust Declaration and the conveyance attached thereto created a valid trust known as The Ben J. Altheimer Foundation, which became at that time a valid and effective

dation Trustees would receive approximately one-half of the total Altheimer Estate. To avoid the validity of the Declaration of Trust that created ''The Ben J. Altheimer Foundation'' it became necessary in the present litigation for the Intervenor to attack the 1948 decree, since that decree found and declared the said Foundation to be valid. The Foundation Trustees claimed, *inter alia,* that the 1948 decree was *res judicata,* and that the Intervenor was bound by that decree.

I. *The Rule Of Res Judicata.* The threshold question, therefore, is whether the Intervenor is barred by the rule of *res judicata* and thereby prevented in the present litigation from successfully questioning the validity of the 1948 decree, *i. e.,* the decree in Case No. 24988 in the Jefferson Chancery Court. In *Missouri Pacific Rd. Co.* v. *McGuire,* 205 Ark. 658, 169 S. W. 2d 872, we quoted from and adopted as our own the statement then found in 30 Am. Jur. 908:

'' 'Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' ''[7]

In 30A Am. Jur. 376, ''Judgments'' § 328, it is said that the doctrine of *res judicata* is a branch of the law of estoppel; and that estoppel is frequently used in connection with the rule which precludes the relitigation of particular facts and issues. The 1948 decree in the Jefferson Chancery Court was a decree rendered in a court of competent jurisdiction. To escape the rule of *res judicata,* the Intervenor claims: (a) there was fraud in the 1948 decree; (b) the 1948 decree was by consent (collusion); and (c) there was no proper service on the

---

trust as between the said Ben J. Altheimer and those parties hereto who claim an interest under the will; . . .''

[7] The statement may now be found in 30A Am. Jur. 371, ''Judgments'' § 324.

ward of the Intervenor. We proceed, therefore, to examine the Intervenor's attacks on the 1948 decree.

II. *There Was No Fraud In The 1948 Decree.* In the pleadings, the Intervenor claimed that the 1948 decree was obtained by fraud, but the Trial Court found that there was no fraud of any kind in the 1948 suit and decree. The Chancellor's opinion incorporated in the decree contains this language: ". . . the Court finds that there has been no fraud, either actual or constructive, committed by any of the parties to this or the 1948 case." We agree with the Chancellor: there is not the slightest scintilla of evidence of any fraud in the obtaining of the 1948 decree.

III. *The 1948 Decree Was Not A Consent Decree.* The Intervenor urges that the 1948 decree was a consent decree;[8] but we find this claim to be without merit. "A judgment by consent is in effect an agreement or contract of the parties, acknowledged in court and ordered to be recorded, with the sanction of the court." 30A Am. Jur. 353, "Judgments" § 144. "A judgment by consent of the parties is a judgment, the provisions and terms of which are settled and agreed to by the parties to the action in which it is entered, and which is entered of record by the consent and sanction of the court; . . . A consent judgment is not a judicial determination of any litigated right, and is not the judgment of the court except in the sense that the court allows it to go upon the record and have the force and effect of a judgment; . . ." 49 C. J. S. 308, "Judgments" § 173. The 1948 decree was not a consent decree. The record shows that the Court heard evidence and made specific findings: some of the evidence heard in the 1948 case is in the record now before us. There is no merit to the Intervenor's argument that the 1948 decree was a consent decree.

IV. *The Guardians Of Altheimer Junior Asked And Obtained Affirmative Relief In The 1948 Case.* The

---

[8] If the Intervenor could have established that the 1948 decree was a consent decree, then the Intervenor could have next argued that the insane ward was not bound by such consent decree.

Intervenor argues that there was no service of process on the insane defendant, Ben J. Altheimer, Jr., in the 1948 suit; and that, therefore, the decree is void as to the said insane defendant under our holding in *Wilder* v. *Wilder*, 208 Ark. 521, 186 S. W. 2d 933. But the distinguishing difference between the *Wilder* case and the case at bar is that in the *Wilder* case the insane defendant sought no relief on the original action;[9] whereas, in the case at bar, the co-guardians of the insane Ben J. Altheimer, Jr. sought and obtained affirmative relief[10] in the 1948 case. Those co-guardians of Ben J. Altheimer, Jr. stood before the Court in 1948 the same as plaintiffs, because they sought affirmative relief and obtained it: and as plaintiffs service of process on the ward was not necessary. *Evans* v. *Davis*, 146 Ark. 595, 226 S. W. 520. The extent of the relief that they obtained was enormous.

By their affirmative action, the guardians obtained for their ward, Altheimer Junior, free of any administrative costs, (a) conveyances to hundreds of acres of land, (b) promissory notes and bonds for thousands of dollars, and (c) corporation stock certificates for thousands of shares.

V. *Altheimer Junior, And His Guardians, Are Estopped From Attacking The 1948 Decree.* Having held, as we have, that the 1948 decree was free of fraud, that it was not a consent decree, and that the guardians stood as plaintiffs in that case, we go further and consider whether, under such circumstances, the insane ward and his guardians are estopped from attacking the 1948 decree; and we conclude that such estoppel exists.

In *Woodall* v. *Moore*, 55 Ark. 22, 17 S. W. 268, Arthur Woodall became of age in 1884 and in 1885 he

---

[9] Another case similar to the *Wilder* case is *Floyd* v. *Isbell*, 211 Ark. 631, 201 S. W. 2d 755.

[10] In the complaint, Stern, as Executor of the Altheimer Estate, said that there was a question as to whether stock certificates, deeds, and other conveyances found in the Testator's possession had ever been delivered so as to constitute completed gifts. The co-guardians of Altheimer Junior, in their pleadings, prayed *inter alia:* "That the respective properties, securities, and cash hereinabove claimed . . be established and confirmed as effectively donated gifts . . . that the executor . . . be authorized and directed . . . to convey, pay over, and deliver . . . such property . . ."

instituted suit to re-open a former case, claiming that he was a minor in the former case and was not bound by it. It was shown that in the former case the minor's guardian had intervened and filed a cross bill for relief. In holding that Arthur Woodall could not successfully attack the decree in the former case, even though rendered during the minority of Woodall, Mr. Justice Hemingway used this language: "When infants by their guardian or next friend go into Court to assert their rights, they proceed under the eye of the Court, and are supposed to enjoy its care and protection, and conclusions therein reached are as binding upon them as upon persons *sui juris.* 1 Herman on Est., sec. 164; *Corker* v. *Jones,* 110 U. S. 317; Tyler on Infancy, p. 172; *Winchester* v. *Winchester,* 1 Head 484; see *Bickel* v. *Erskine,* 43 Iowa 213; 1 Black on Judg., sec. 198."

In *Fidelity & Deposit Co.* v. *Meyer,* 197 Ark. 42, 121 S. W. 2d 873, both the guardian and the wards were held estopped by the guardian having acted for her wards in a previous judicial proceeding. The guardian had in 1931 sued for and obtained property for her wards. Years later the guardian and the wards sought to hold others liable. We held that the former action by the guardian estopped the guardian and the wards from the second action six years later; and, after quoting from *Woodall* v. *Moore, supra,* we said:

"Every proceeding in the course of the administration relative to the property in question was done under the eye of the court and under its care and protection, and in view of this fact the action of the guardian in holding and treating this asset as valuable for all these years under such supervision is attributable to the minors, and that both the minors and the guardian are clearly estopped in good conscience from prosecuting this suit, especially is this true in view of the fact they have not produced any evidence of actual fraud which caused them to lose anything, and simply upon the ground that an order to make the investment was not first procured from the probate court."

The holdings in other jurisdictions are in accord with our cases. In 34 C. J. 1023, "Judgments" § 1446 cases are cited from many jurisdictions to sustain this text: "A ward is concluded by the judgment in any action concerning his interest in which he was legally represented by his guardian. . ." In discussing the binding force of a judgment against a person under disabilities it is stated as regards insane persons in 50 C.J.S. 295, "Judgments" § 766: "The ward is bound by a judgment in an action properly brought by his committee."

Reflection shows the necessity of such a holding: a guardian for an insane person brings action for and on behalf of his ward and the action is fairly and legally tried and concluded and the judgment paid; if the insane person be not bound by that proceeding, then at any time during the life of the insane ward a subsequent proceeding could be instituted and there would be an unending number of actions. Common sense and fairness demand that the first action when fairly and legally concluded should be final and binding.

VI. *Conclusion.* In the case at bar, the guardians of the insane Altheimer Junior sought and obtained for him substantial relief in the 1948 suit. That suit was fairly and legally tried and concluded. The 1948 decree is final and the guardians and their ward are bound by it; and cannot in this present case successfully attack the 1948 decree. The fact that the Foundation Trustees were able to obtain from the Testamentary Trustees an interest in subsequently discovered assets (from which decree the Testamentary Trustees have not appealed) gives the Guardian-Intervenor no standing to assail the entire 1948 decree. Since the Intervenor cannot attack the 1948 decree it becomes unnecessary for us to discuss the many other points presented in the excellent briefs.

Affirmed.

HARRIS, C. J., not participating.