JONES *v.* BARNETT.

5-2859                                   365 S. W. 2d 241

Opinion delivered February 18, 1963.

[Rehearing denied March 25, 1963.]

*John Harris Jones,* for appellant.

*Bridges, Young & Matthews, Gene Baim,* for appellee.

ED. F. McFADDIN, Associate Justice. The present case is a sequel to *Selig* v. *Barnett,* 233 Ark. 900, 350 S. W. 2d 176. We are here asked to decide whether the appellant Jones is entitled to an attorney's fee for services rendered in that case; and, if so, how much fee should be allowed. The Trial Court allowed Mr. Jones a fee of Ten Thousand Dollars, and from that decree there is this appeal and cross appeal. A study of the opinion of this Court in *Selig* v. *Barnett, supra,* is essential to an understanding of the present litigation. Ben J. Altheimer is, and has been for many years, an incompetent; and his co-guardians are Mrs. Elsie J. Selig and Mr. R. S. Barnett. These persons have served as co-guardians for a number of years. In 1957, with the sanction of the Pro-

bate Court, there was a different attorney for each of the co-guardians: Mr. Barnett was represented by Mr. Frank Bridges of the Bridges firm;[1] and Mrs. Selig was represented by Mr. Gene Baim.

In 1957, the Trustees of the Altheimer Foundation brought suit against the Trustees of the Testamentary Trust of Ben J. Altheimer, Sr., seeking to reopen a 1948 decree and have certain property awarded to the Foundation Trustees as against the Testamentary Trustees. Mr. R. S. Barnett was one of the Foundation Trustees and acted in such capacity in the said 1957 suit, although he was also co-guardian of Ben J. Altheimer, Jr. Shortly after the said 1957 suit was filed, Mrs. Elsie J. Selig, co-guardian of the incompetent Ben J. Altheimer, Jr., received information as to some doubt about the validity of the Ben J. Altheimer Foundation, and that the Testamentary Trustees had failed to present such issue in the 1948 proceedings. It was reasoned that if the Altheimer Foundation was invalid, then all the property of the Foundation would belong to the Testamentary Trustees, and would materially increase the estate of the incompetent, Ben J. Altheimer, Jr. Accordingly, Mrs. Selig consulted with Mr. Baim, who represented her as co-guardian, to see what steps, if any, should be taken by Mrs. Selig, as co-guardian; and Mr. Baim advised her that Mr. John Harris Jones, appellant in the present case, was a most capable lawyer in such matters. Accordingly, Mr. Baim and Mrs. Selig consulted Mr. Jones; and as a result, Mr. Jones and Mr. Baim filed an intervention for Mrs. Selig, as co-guardian, in the pending 1957 suit brought by the Foundation Trustees against the Altheimer Testamentary Trustees. Mr. Baim and Mr. Jones continued to represent Mrs. Selig as co-guardian in that litigation to and including the denying of the petition for rehearing in this Court in the case of *Selig* v. *Barnett, supra.*

In due time after the conclusion of that litigation, Mr. Baim and Mr. Jones each filed a claim in the guard-

---

[1] The name of the firm has been changed several times. It is now Bridges, Young, and Matthews.

ianship proceedings of Ben J. Altheimer, Jr., pending in the Jefferson Probate Court, for legal services rendered to the co-guardian, Mrs. Selig, in the said case of *Selig v. Barnett*. Mr. Barnett, as co-guardian, resisted the allowance of any fee to either attorney. The Probate Court entered a judgment[2] allowing Mr. Baim a fee of $4,-000.00 and Mr. Jones a fee of $10,000.00. Mr. Jones has appealed, claiming he is entitled to a fee of $55,200.00; and Mr. Barnett, as co-guardian, has cross appealed.

1. *The Cross Appeal Of Barnett*. As stated, Mr. Barnett, as co-guardian, has cross appealed, claiming that the Probate Court was in error in allowing any fee to Messrs. Baim and Jones for representing Mrs. Selig, as co-guardian, in the case of *Selig v. Barnett*. This cross appeal deserves first consideration, because a decision in favor of Mr. Barnett on this point would make unnecessary the consideration of any other matters. Mr. Barnett insists, *inter alia,* that:

(a) The litigation for which attorneys' fees are requested was conducted by one co-guardian without the consent or approval of the other co-guardian and is therefore unauthorized and not a proper exercise of the guardian's duties;

(b) The attorneys were representing Mrs. Elsie J. Selig, and not the Estate of Ben J. Altheimer; and the attorneys for Mrs. Selig should not be allowed attorneys' fees for litigation commenced for the personal interest of the guardian.

(c) The proper method for securing payments of fees from a ward's estate is on the petition or accounting of the guardian; and

(d) The allowance for attorneys' fees must be based on services which were reasonable, necessary, and conferred benefit upon the ward's estate.

We find no merit in the cross appeal. Mrs. Selig, as co-guardian, had a duty to her ward to recover for him

---

[2] The Probate Court allowed expenses of $202.85, which we consider as an uncontested item; so we refer only to the fees for legal services as being contested.

any property to which he was entitled. She had received information, from a source which she considered reliable, to the effect that the entire Altheimer Foundation was invalid. She could not act in conjunction with her co-guardian, Mr. Barnett, because he was one of the Trustees of the Altheimer Foundation which had filed the suit against the Altheimer Testamentary Trustees; and, of course, Barnett as guardian could not consistently oppose the claim of Barnett as Trustee of the Altheimer Foundation. So Mrs. Selig consulted Mr. Baim, who was the attorney that had represented her for some time as co-guardian; and it was at his insistence that she consulted Mr. Jones, who agreed to, and did, assist in the intervention of Mrs. Selig as co-guardian. The intervention was not frivolous or trifling: it represented a real issue. Even though it was ultimately unsuccessful, it was nevertheless an issue that Mrs. Selig, as co-guardian, prosecuted in good faith. Messrs. Baim and Jones rendered faithful and extensive service to Mrs. Selig, as co-guardian.

It is urged that Mrs. Selig, as one of the beneficiaries in the Altheimer Testamentary Trust, would also have benefited personally if her intervention as co-guardian had been successful; and from this fact Mr. Barnett insists that Messrs. Baim and Jones were representing Mrs. Selig personally. But the evidence indicates most strongly that Messrs. Baim and Jones were representing Mrs. Selig only as co-guardian in the intervention. The question of a fee to be paid by Mrs. Selig personally was never mentioned. Messrs. Baim and Jones testified, without express contradiction, that Mrs. Selig made the statement to them that her reason for bringing the action was solely for the benefit of her ward; that it was to benefit him, her first cousin; and that she was his closest relative in Arkansas. The attorneys stated that they were never given any indication that Mrs. Selig was doing any of this for her personal good, and that they were repeatedly told by Mrs. Selig that she was doing what she did because she thought it her duty to her ward. We are convinced, and hold, that Messrs. Baim and Jones

represented Mrs. Selig as co-guardian and not as an individual. When the attorneys filed their petition in the Probate Court for a fee for representing Mrs. Selig as co-guardian, she took the position that it was for the Probate Court to determine the issue. Called by the Court, she testified:

"I don't see how I can be anything but neutral. I am Jack's Guardian and I should remain neutral.

"THE COURT: You are neither approving nor disapproving the allowance of a fee?

"I will leave it to your discretion. . . . The Court has always set the fees in this matter."

Mr. Barnett insists that the Probate Court cannot allow a fee until the guardian requests it, and cites, *inter alia; Lothrop* v. *Duffield* (Mich.), 96 N. W. 577; *In Re Garbini's Guardianship* (Calif. App.), 83 P. 2d 508; *Hutton* v. *Gwin* (Miss.), 195 So. 486; and *Hunt* v. *Maldonado* (Calif.), 27 P. 56. But, under the testimony of Mrs. Selig, a heretofore copied, and under the peculiar facts of this case, we hold that the Probate Court had the power to grant the petition of Messrs. Baim and Jones for legal services rendered to Mrs. Selig as co-guardian. Section 57-637(b) Ark. Stats. is a part of the probate Code, and provides:

"Upon the petition of any person having a claim against the estate of a ward for services lawfully rendered to the ward or his estate . . . the court may, after notice, upon appropriate hearing, direct the guardian to pay such claim." Also, § 57-641 Ark. Stats., a part of the Probate Code says: ". . . The guardian may employ legal counsel in connection with the discharge of his duties, and the court shall fix the attorney's fee which shall be allowed as an item of the expense of administration."

Of course, in the normal guardianship proceeding, the guardian should first get the authorization of the Probate Court to employ an attorney; but this is not an ordinary case. Here: Mrs. Selig, with the consent of the

Probate Court, had for years employed Mr. Baim as her attorney in such guardianship; there was an apparent conflict between the co-guardians; and Mrs. Selig's regular attorney called in Mr. Jones to assist him in the litigation. The Probate Court knew all along that Mr. Jones was acting with Mr. Baim as attorney for Mrs. Selig, as co-guardian, because in the course of the *Selig* v. *Barnett* litigation in the Chancery Court, and in this Court, the Jefferson Probate Court made repeated orders in the Ben J. Altheimer, Jr. guardianship case, authorizing Mrs. Selig, as co-guardian, to pay expenses incurred in the Chancery case. These included orders made in 1958 and 1959, authorizing the guardian to pay for expenses incurred in the Chancery case of *Selig* v. *Barnett*. There was also an order of June 21, 1960, made by the Probate Court, authorizing Mrs. Selig, as co-guardian, to expend from the ward's estate, the amounts necessary for the filing in the Supreme Court of the appeal from the decree in the Chancery Court, for the cost of the record designated for such appeal, and for the cost of printing the abstract and brief on such appeal. Certainly the Probate Court was kept fully informed that these attorneys of Mrs. Selig, as co-guardian, were representing her as such co-guardian. We hold that the cross appeal of Mr. Barnett is without merit.

II. *The Amount Of Attorney Fee That Mr. Jones Should Recover.* Having found that Messrs. Baim and Jones, as attorneys for Mrs. Selig, as co-guardian, were entitled to receive a fee, the next question is what the fee should be. The Probate Court allowed Mr. Baim a fee of $4,000.00 for his services to Mrs. Selig, as co-guardian; and Mr. Baim has not appealed, so the correctness of the fee allowed Mr. Baim requires no further comment. The Probate Court allowed Mr. Jones a fee of $10,000.00, and he has appealed, claiming that he should be allowed a fee of $55,200.00  Mr. Barnett insists that the $10,-000.00 is more than adequate. Mr. Jones' claim is based on the number of hours he spent in the case of *Selig* v. *Barnett,* computed at the rate of $25.00 an hour. He kept a most accurate record, and his original work sheets were

introduced in evidence, showing every minute devoted to the case of *Selig* v. *Barnett* from June 25, 1957, to and including November 6, 1961. The original work sheets are before us, and they show a total of 2208 hours spent by Mr. Jones. He testified in the Probate Court, and urges here, that the Probate or Chancery Court had allowed compensation to other attorneys in the Selig-Barnett case, and the earlier companion case of *Selig* v. *Morrison*,[4] on the basis of $25.00 per hour; and that he is entitled to compensation at the same rate per hour. His brief here is an excellent treatise on the legal profession in general, and fees in particular.

Notwithstanding all of the foregoing, we find it impossible to fully agree with Mr. Jones' conclusions. There are many factors, in addition to that of *hours spent*, to be considered in the problem of fixing a just and adequate fee for an attorney in any specific case[5] In *Sain* v. *Bogle*, 122 Ark. 14, 182 S. W. 515, we said: "... in determining what is a reasonable attorney's fee, it is competent and proper to consider the amount and character of the services rendered, the labor, time, and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys."

In many of the cases cited, the Court, in fixing the fee, has had the benefit of the testimony of other attorneys as to what such witnesses considered to be a

---

[4] *Selig* v. *Morrison*, 230 Ark. 216, 321 S. W. 2d 769.

[5] Some of our own cases involving the problems of fixing an attorney's fee are: *Lilly* v. *Robinson*, 106 Ark. 571, 153 S. W. 820; *Sam* v. *Bogle*, 122 Ark. 14, 182 S. W. 515; *Martin* v. *Manning*, 124 Ark. 74, 186 S. W. 302; *Bayou Meto Dist.* v. *Chapline*, 143 Ark. 446, 220 S. W. 807; *Slayton* v. *Russ*, 205 Ark. 474, 169 S. W. 2d 571; *Mo. Pac.* v. *McDonald*, 206 Ark. 270, 174 S. W. 2d 944; *Turner* v. *Turner*, 219 Ark. 259, 243 S. W. 2d 22; and *Whetstone* v. *Travis*, 223 Ark. 856, 269 S. W. 2d 320. See also opinion by Judge John E. Miller in *Monsanto Chem. Co.* v. *Grandbush*, 162 F. Supp. 797. There are also annotations in 143 A.L.R. 672, and 56 A.L.R. 2d 13, entitled, "Amount of Attorney's compensation in absence of contract or statute fixing amount"; and these annotations show the general trend of the holdings in the various jurisdictions. See also 5 Am. Jur. 379, "Attorneys at Law" § 198.

reasonable fee for services rendered in the matter in question; but there is no such testimony in the case at bar except the testimony of Mr. Baim and Mr. Jones; so Mr. Jones' case rests largely on the basis of the number of hours worked, multiplied by $25.00 per hour. We are entirely unwilling to adopt such as an exclusive basis in the case at bar. It is possible that in a matter extending over several years, as did this case, the law of diminishing returns would apply to the hours consumed. Furthermore, in *Whetstone* v. *Travis*, 223 Ark. 856, 269 S. W. 2d 320, we quoted from an earlier case:

" 'Although this testimony (as to a reasonable fee) was not directly contradicted by appellants, the trial court, and this court on appeal, are not required to lay aside their general knowledge and ideas of values of such services, and are not entirely controlled by testimony of this nature . . . In determining what would be a reasonable fee we take into consideration the amount of time and labor involved, the skill and ability of the attorneys, and the nature and extent of the litigation.' "

Other important factors to be always considered in a case such as this one relate to the ability of the estate to pay the fees both of Mr. Baim and Mr. Jones. The Trial Court had access to the record in the case of *Selig* v. *Barnett*, just as we have, and the Trial Court fixed Mr. Jones' fee at $10,000.00. Without prolonging this opinion, it is sufficient to say that after considering the entire record and all the various factors involved in the problem of fixing a fair and reasonable attorney's fee in this case, we reach the conclusion that Mr. Jones is entitled to a fee of $17,500.00.

Therefore, the case is affirmed on cross appeal; and is reversed on direct appeal and remanded with directions to enter a decree allowing Mr. Jones a fee of $17,500.00. In all other respects, Probate Judgment is affirmed.

HARRIS, C. J., not participating.

JOHNSON, J., dissents in part.

JIM JOHNSON, Associate Justice (dissenting in part). I agree with the majority view that the lawsuit in which appellant served as principal counsel, *Selig* v. *Barnett*, 233 Ark. 900, 350 S. W. 2d 176, "was not frivolous or trifling," but to the contrary in my view it was one of the most complicated, involved and best prepared cases ever to be presented to this court. Appellant masterfully presented for his clients a serious claim for property worth in excess of a half million dollars. The evidence was undisputed that during the period between June 25, 1957, through November 6, 1961, appellant worked 2208 hours on the litigation for which he seeks compensation. The question of whether appellant is entitled to compensation for his services is settled by the trial court and this court on appeal as reflected by the majority opinion. My only disagreement with the majority is in the amount of the fee which should have been allowed. The number of hours spent on this case is absolutely undisputed in the record and the quality of the work which we have reviewed on appeal as well as the work sheets in the present record amply bears out appellant's claim to the hours of work devoted to this matter. The 2208 hours devoted to this litigation figures out to be over 42 hours a week for an entire year spent on this single case.

The record is further undisputed that other attorneys in the same litigation were paid on the basis of the Jefferson County Bar Association minimum fee schedule of $25.00 per hour. The record is further undisputed that the estate is not only able to pay the requested fee but that the estate is accustomed to paying fees commensurate with the basis urged by appellant.

Appellant cogently stated my sentiments relative to the fee awarded by the trial court and the fee awarded here on appeal when he said, "[The] fee is 'better than a poke in the eye with a sharp stick'. If lawyers were mendicants, it would seem ungrateful to appeal from allowance of such a substantial sum. But a lawyer who has performed services is not in a position of a beggar before the courts when the time comes for the determination of his fee.

"If an attorney offered employment from a client, whose fee must be set by the court, is in a perilous position, so also is the client. In setting attorneys' fees the courts protect not only the attorney but also the client and the public. Reasonable fees are those which are not so small 'that well prepared attorneys would avoid that class of litigation or fail in the employment of sufficient time for thorough preparation, but should be for the purpose of compensating * * * in engaging counsel thoroughly competent to protect his interests.' *John Hancock Ins. Co.* v. *Magers,* 199 Ark. 104, 132 S. W. 2d 841, 846.''

The American Bar Association has published a number of treatises on the economics of law practice. See American Bar Association Economics of Law Practice Series. These publications graphicly point out the fact that ''a Lawyer's time and advice are his stock in trade.'' A. Lincoln. With the high cost of a legal education, maintenance of an adequate library, maintenance of law offices, equipment and furniture, telephone and other utilities, secretarial help, materials and supplies, postage, fees, professional association dues and other expenses and costs incidental to the practice of law [the realities of which have not yet become lost in my memory of the days prior to donning the robes nor dulled by the State so kindly lifting most of these burdens from my shoulders], I am unwilling to become a party to a precedent which sets $7.92 per hour as adequate gross compensation for services of members of the Bar of Arkansas.

Therefore I strongly dissent to that portion of the majority opinion which finds appellant's services to be worth less than the minimum fee schedule adopted by the Jefferson County Bar Association.