OMOHUNDRO *v.* ERHART.

5-1496

311 S. W. 2d 309

Opinion delivered March 17, 1958.

[Rehearing denied April 14, 1958]

*Charles L. Carpenter,* for appellant.

*Glenn F. Walther,* for appellee.

GEORGE ROSE SMITH, J.   The appellant, Lehte S. Omohundro, and the appellee, Delphine S. Erhart, are sisters.   Their mother, at the time of her death in 1945, was serving as guardian for a third sister, Gladys M. Shader, who has been mentally incompetent for about forty-five years.   After their mother's death Mrs. Omohundro and Mrs. Erhart were appointed as guardians in succession and served in that capacity, despite much disharmony, for twelve years.

In 1957 Mrs. Erhart filed the present petition, stating that it would be to the ward's best interest for both guardians to be removed and a successor appointed. After an extended hearing the probate court entered an order removing both the guardians and naming Claibourne W. Patty as their successor. In appealing from this order Mrs. Omohundro contends that the record does not support the court's finding that she, as well as Mrs. Erhart, is unsuitable to act as guardian, is incapable of further performing her trust, and has failed to perform duties imposed upon her by law and by orders of the court.   These findings, if sustained by the proof, concededly justified the court in removing the two guardians.   Ark. Stats. 1947, §§ 57-621 and 62-2203.

It may be said at the outset that the trial court was undoubtedly right in concluding that a continuation of the dual guardianship would not promote the welfare of the ward. According to the testimony of both parties their joint control of their sister's estate has been marked by continual bickering and at times by bitter quarrels. At least two attorneys are shown to have given up the attempt to represent the two sisters and to have resigned. In one instance a former probate judge felt compelled to leave the courtroom in the middle of one of many heated disputes between the coguardians. In 1956 the court took the unusual step of dividing the assets of the ward between the two guardians, with each to be responsible only for her allotted half, but this arrangement had no perceptible effect upon the parties' constant wrangling.

Both sisters testified at length below; it is clear that their differences are beyond reconciliation. Each accuses the other of mismanagement of the estate. Each asserts that she has been forced, by the other's obstinacy, to advance money for the ward's care, although the ward's estate is worth more than $200,000. Each charges the other with having obtained the entry of court orders without notice. Each insists that the other has contemptuously disobeyed the judge's orders. The strife has even extended to the care of the helpless ward; the guardians have disagreed about the hospitals in which she should be placed and about the advisability of an operation upon her brain. There is little reason to think that Mrs. Erhart overstated the matter when she testified that Mrs. Omohundro "never agreed with me on anything."

When it is remembered that the sole purpose of this guardianship is to further the well-being of the afflicted ward, it must be conceded that the trial court had no choice except to terminate the joint custody. The appellant, at least tacitly, admits this to be true; but she contends that she has been wholly without fault, that Mrs. Erhart alone has been the cause of all the difficulty, and that the court should therefore have removed only the latter.

This contention is not supported by the preponderance of the evidence. Many of the charges and counter-charges involve only an issue of credibility as between two interested parties; in this situation we are guided by the findings of the trial judge, who sees the witnesses at firsthand. *Cowan* v. *Powell,* 219 Ark. 498, 243 S. W. 2d 373. Much of Mrs. Erhart's testimony, if credited, indicates that Mrs. Omohundro is temperamentally unsuited to act as a fiduciary.

Furthermore, it does not appear that the appellant has been entirely without fault in the performance of her duties. For some ten years after the dual appointment she seems to have left matters largely in the control of Mrs. Erhart, who says that Mrs. Omohundro would sign blank checks for use in the administration of the ward's affairs. In 1956 Mrs. Omohundro began taking a more active interest in the proceeding and complained that no inventory of the estate's investments had ever been lodged with the court and that the rents were not being properly accounted for. If these charges were true Mrs. Omohundro cannot be regarded as having been without blame in the matter. As a fiduciary it was her duty to participate in the management of the estate and to use reasonable care to see that no breach of trust was committed by her fellow guardian. Rest., Trusts, § 184. If breaches of trust had occurred she must either have approved the wrongful conduct or have failed through culpable inattention to see that the ward's interests were being protected. She is thus not in a position to disclaim responsibility for all the misconduct that she now seeks to attribute to Mrs. Erhart. On the whole case we are of the opinion that the chancellor did not err in finding both the guardians to have been at fault and in accordingly relieving them of their duties.

Affirmed.