OMOHUNDRO *v.* PATTY, GUARDIAN.

5-1807                                                  321 S. W. 2d 746

Opinion delivered March 16, 1959.

*Charles L. Carpenter,* for appellant.

*Claibourne W. Patty,* for appellee.

PAUL WARD, Associate Justice.  This appeal challenges the order of the Probate Court approving the first annual accounting of Claibourne W. Patty, guardian of the person and the estate of Gladys M. Shader, incompetent.  Much of the factual background leading up to this litigation will be found in the case of *Omohundro* v. *Erhart,* 228 Ark. 910, 311 S. W. 2d 309, decided March 17, 1958, and it need not be repeated here.

When appellee, the guardian submitted his first annual accounting a hearing was had before the court, at which time he submitted his records consisting of bank statements, deposit slips, cancelled checks, bills paid, income tax returns, and tax receipts.  The court approved the guardian's accounts over the objection of appellant as to certain items.

With the exception of one small item, hereafter discussed, we have concluded the trial court was right. The questioned items, together with our reasons for approving the same, are hereafter set out.

1.   Appellant in a general way, without setting out specific items, objects to the nature of the "vouchers" submitted by the guardian, but no specific error is indicated.  It appears from the record, as before mentioned, that the guardian submitted various forms of receipts and disbursements, and that he submitted a copy of his accounting to appellant two weeks before the hearing.

It seems that the guardian kept some of the substantiating documents in his office, that appellant knew this, but that she made no effort to secure or examine them. There is no showing that the receipts presented to the court were not proper or sufficient.

2. We see no merit in the contention that the guardian did not properly account for $127.66 spent for clothes for his ward during the 14 months accounting period. Certainly this expenditure seems reasonable considering the ward's estate amounts to over two hundred thousand dollars. Since the ward is in a St. Louis Hospital, her sister made the purchases and presented the bills to the guardian who paid them, presumably by check. The court correctly approved, we think, the payment of $57.50 to an accounting firm for preparing the ward's 1956 State and Federal Tax Returns, and the payment of the taxes shown thereby. It is not shown in what way these items could have been better authenticated. Nor are we shown any valid objection to the court's approval of the payment of approximately $15 per month to the hospital to be used for the ward's personal needs pursuant to the provisions of Ark. Stats. Section 57-632.

3. It was proper, we think, for the court to allow as a charge against the ward's estate the payment of $200 attorney fee to Glenn F. Walther in the *Omohundro* case, *supra,* and also the sum of $115.10 for brief costs in the same case. The title, *Omohundro* v. *Erhart,* in the case referred to, is somewhat misleading since, as it appears to us, Mrs. Erhart was not the real party in interest. This fact is shown by the opinion in that case. She was not only not a party in interest but she was a party against her will. Walther's services were directed toward preserving the guardianship, as set up by the court's order with the approval of Mrs. Erhart, which was being opposed by Mrs. Omohundro. So, we think the said payments were properly charged to the estate.

4. It seems that Mrs. Erhart owns an undivided 1/3 interest and the ward owns an undivided 2/3 interest in certain business property. Mrs. Erhart, as has been

the arrangement for many years, collects the rents and looks after the renting and upkeep of the building. All expenses incurred by her were itemized and deducted from the gross receipts, and the ward's share turned over to the guardian, with no charge for her services. Although under the court order Mrs. Erhart has no authority as a guardian, we know of no legal reason why she cannot act as an agent for the regular guardian in this instance.

5. The assets of the ward's estate totals over $200,-000 and the yearly income exceeds $18,000. We think the court was justified in allowing the guardian a fee of $1,377.75 over a period of 14 months. The only guide the court had in fixing the fee is found in Ark. Stats. Sec. 57-641, which provides it shall be just and reasonable. We cannot say the fee allowed was unjust or unreasonable, especially in view of the guardian's testimony that he had appeared in more than 30 hearings during the accounting period.

We do not agree with appellant's contention that appellee should personally pay the premium on his guardianship bond. There can be no doubt that it was incumbent upon appellee to give a bond, under the provisions of Ark. Stats. Sections 57-617 and 57-618, when one was required by the court. It is not urged here that the court did not require a bond and so we must assume that it did. This being true, we think the ward's estate should pay the premium. See 25 Am. Jur. page 109, Sec. 177, and *Snyder* v. *Snyder*, 224 Wis. 200, 272 N. W. 1, 111 A. L. R. 261.

6. It seems that in the *Omohundro* case *supra,* this court adjudged $50 for brief costs against Mrs. Omohundro, and that the trial court, in the case here being considered, ordered her to pay Mrs. Erhart that sum. We don't understand that item to have been an issue covered by the accounting or raised in the objections, but merely a personal matter between the two parties involved. Hence, we think the court erred in making the order in question, and it should be voided on remand.

Consequently, the order of the Probate Court approving the annual accounting of the guardian is affirmed except as to the item mentioned in the preceding paragraph, and, for the purpose of making the indicated correction only, the cause is remanded.

Affirmed as modified, and remanded.

HARRIS, C. J., and McFADDIN and SMITH, JJ., dissent in part.

ED. F. McFADDIN, Associate Justice (dissenting). My dissent is because there are two items in the Guardian's account which should have been disallowed by the Probate Court. These two items relate to the case of *Omohundro* v. *Erhart,* and are: (1) the $200.00 attorney's fee allowed Mr. Walther in that case; and (2) the amount of $115.10 allowed as brief costs in that case. These items should have been paid by Mrs. Erhart personally, and not by the Guardian of the Estate of Mrs. Shader.

I have carefully examined the transcript and the briefs in the case of *Omohundro* v. *Erhart,* No. 1496 in this Court, decided March 17, 1958 and reported in 228 Ark. 910, and 311 S. W. 2d 309. I cannot see how the Guardian of Mrs. Shader's estate should pay the fee of Mrs. Erhart's attorney and brief costs in that case, any more than the Guardian of Mrs. Shader's estate should pay the fee of Mrs. Omohundro's attorney and her brief costs in the same case. In the trial in the Probate Court (from which came the appeal to this Court in said case No. 1496), the record shows that Hon. Chas. L. Carpenter appeared for Mrs. Omohundro, and Hon. Glenn Walther appeared for Mrs. Erhart; neither of the attorneys appeared for the Guardian. The case was styled in this Court, *Lehte S. Omohundro* v. *Delphine S. Erhart.* The appearances of these attorneys were for the appellant and the appellee: no one appeared for the Guardian of the estate of Mrs. Shader. By no stretch of the imagination can I see how the majority can now say that the Guardian of the estate of Mrs. Shader was a party to that litigation so as to justify the Guardian in paying the attorney's fee and the brief costs of Mrs. Erhart. They were items that should have been paid by Mrs. Erhart personally, just

as Mrs. Omohundro should pay her attorney's fee personally. So, on these two items, I dissent. They may seem small; but we should keep the law straight.

The Chief Justice and Justice GEORGE ROSE SMITH join in this dissent.