The PRUDENTIAL INSURANCE COMPANY of America
*v.* Melissa Conrad FRAZIER and Mellonie Conrad

94-1320                                                914 S.W.2d 296

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*The Rose Law Firm, A Professional Association,* by: *Phillip Carroll,* for appellant.

*Crawford Law Firm,* by: *Michael Crawford,* for appellees.

ANDREE LAYTON ROAF, Justice. Appellant, the Prudential Insurance Company of America, appeals from a judgment in an action for accounting, in which the chancellor awarded $30,519.60 in insurance proceeds to appellees, Melissa Conrad Frazier and Mellonie Conrad. The court of appeals certified this case to us as one requiring interpretation of the Probate Code of

1949. Jurisdiction is therefore properly in this court pursuant to Ark. Sup. Ct. R. 1-2(d)(1) and (a)(3). For reversal, appellant argues that it properly paid the insurance proceeds to appellees' guardian and that, under the law of trusts, it had no further obligation to appellees as beneficiaries. We find no merit to these arguments and affirm.

Appellees were aged eight and nine when their mother died on August 27, 1983. On October 25, 1983, an order was entered by the Garland County Probate Court appointing their uncle, Jerry Reid, as guardian of their persons and estates. The order stated that "bond shall be determined." Bond was not determined and letters of guardianship were apparently never issued to Mr. Reid. On November 10, 1983, appellant paid the appellees' $30,519.60 share of their mother's life insurance proceeds to Reid as guardian of their estates. Reid and his wife adopted appellees in July 1984. After reaching the age of majority, appellees initiated this suit in 1994 by filing a petition for an accounting and for judgment, alleging that both Reid and appellant had failed and refused to account for the life insurance proceeds. After a bench trial, the chancellor found that Reid spent the proceeds for improper purposes and without court approval, that appellant and Reid were jointly and severally liable to appellees, and that Reid was liable to appellant for any payment of the judgment appellant made.

Unlike the dissenters, we have no difficulty in concluding that the chancellor had subject-matter jurisdiction over an action against an insurance company and former guardian for accounting and judgment. *See Nelson* v. *Wood*, 199 Ark. 1019, 137 S.W.2d 929 (1940) (chancellor imposed trust on property titled in guardian's name but purchased with minor's funds); *Hancock* v. *Hancock*, 197 Ark. 853, 125 S.W.2d 104 (1939) (chancery court had jurisdiction to hear custody dispute between natural mother and guardian previously appointed in probate court); *Grogan* v. *Weatherby*, 196 Ark. 705, 119 S.W.2d 557 (1938) (chancellor determined that guardian's failure to give bond rendered proceeding void and set aside partition sale of minor's land); *A&P's Hole-In-One, Inc.* v. *Moskop*, 38 Ark. App. 234, 832 S.W.2d 860 (1992) (accounting is an equitable remedy; provides a means to compel one entrusted with property of another to render account of his actions, and for recovery of

any balance due).

Appellant first argues that it properly paid the insurance proceeds to Reid as appellees' guardian and was under no duty to ensure that the guardian would carry out his obligations. This argument challenges the chancellor's finding that appellant "paid insurance proceeds to Reid without court authority and without [e]nsuring the beneficiaries would be properly protected." Appellant presented no evidence at the bench trial. Appellant did, however, move for a directed verdict at the close of all the evidence arguing that it had properly paid Reid the proceeds on November 10, 1983, because Reid had been appointed guardian by court order entered October 25, 1983.

Appellees admitted into evidence, without objection, a certified copy of the entire file of the guardianship proceedings. The October 25, 1983 order appointing Reid guardian stated that "bond shall be determined." There is nothing in the guardianship proceedings indicating that bond was ever determined or issued, or that letters of guardianship were ever issued. Appellees introduced a notice from the Probate file dated October 10, 1984, directing Reid to file an inventory of appellees' assets, and Reid's response dated November 9, 1984, which listed each appellee's sole asset as $437.00 monthly social Security benefits. The chancellor found that Reid did not disclose the insurance proceeds he received as guardian from appellant almost one year earlier. The chancellor also found that, because the proceeds were not disclosed, no bond or additional accounting was required by the court in the guardianship proceedings.

On appeal, appellant argues it properly paid the proceeds to Reid as guardian pursuant to the October 25, 1983 order because, at that time, there was no requirement that a bond be issued in a guardianship proceeding and Reid had accepted the appointment as guardian. Appellees respond to this argument with case law to the effect that a guardian is not appointed until bond has been issued. *See* e.g., *Sturdy* v. *Jacoway*, 19 Ark. 499 (1858).

The parties' reliance on the requirement of a bond or on Reid's acceptance of appointment as the determinative issue is misplaced. The issue before us is whether appellant paid the proceeds to Reid without court authority. This issue is controlled

by Ark. Stat. Ann. § 57-618 (Repl. 1971), in effect at the time the proceeds were paid, which provided that letters of guardianship, "until revoked or cancelled by the court, shall protect persons who, in good faith, act in reliance thereon." As determined by the chancellor, no bond was ever set and no letters of guardianship were ever issued. The Probate code of 1949 did not authorize appellant to pay Reid the proceeds on the strength of a court order conditionally appointing him guardian, with bond yet to be determined. We find no error in the chancellor's ruling in this regard.

■ Appellant's second argument for reversal is that, after paying the proceeds to the guardian, it had no further obligation to appellees under the law of trusts. We answer this argument summarily. First, the argument is premised upon the assumption that the trial court found a post-payment obligation of appellant to appellees as beneficiaries deriving from the law of trusts. The trial court made no such finding or any ruling that appellant had a continuing obligation to appellees after it paid the proceeds. Rather, the ruling was that appellant did not ensure that it properly paid the proceeds to the guardian and in fact paid the proceeds without court authority. Second, the abstract does not reveal that appellant relied on the law of trusts in the proceedings below. The record on appeal is confined to that which is abstracted. *Mahan* v. *Hall*, 320 Ark. 473, 897 S.W.2d 571 (1995). This court does not address arguments that were not raised below. *Wacaser* v. *Insurance Comm'r*, 321 Ark. 143, 900 S.W.2d 191 (1995).

We find no merit to appellant's arguments and affirm the chancellor's order.

DUDLEY, NEWBERN, and CORBIN, JJ., dissent.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. The suggestion that equity has no subject-matter jurisdiction in this case wholly ignores settled law and the facts. Although the majority opinion concludes the chancery judge here had jurisdiction of this case, I write to explain why the chancellor had the authority to rule as he did.

Melissa and Mellonie Conrad were ages eight and nine

years old when their mother, Betty, died in August of 1983. Betty had a life insurance policy with The Prudential Insurance Company of America which provided $30,519.60 in proceeds to the two girls. After Betty's death, Melissa and Mellonie went to live with their uncle, Jerry Reid, who was appointed their guardian on October 25, 1983. The guardianship order provided a "bond shall be determined," but none was. Nonetheless, Prudential sent the insurance proceeds to Reid, stating the proceeds were "for the person and estates of Melissa and Mellonie Conrad," and Reid concedes he knew those proceeds belonged to the two girls. He also began receiving Melissa's and Mellonie's social security payments, totalling $847.00 a month. Reid initially placed the life insurance proceeds in certificates of deposit issued for the girls' benefit.

Reid testified that he became disabled sometime in 1983 and did not work, and while he made claims for workers' compensation and social security benefits, he only commenced receiving them between 1986 and 1988. Meanwhile, Reid purchased a bigger house in 1984 and admitted he used some of the girls' life insurance proceeds to do so. In the same year, he adopted Melissa and Mellonie, and said that he understood when he became their adopted father "their assets were ours and our assets were theirs." Nevertheless, Reid asserted "the house does not contain money that belongs to the two young ladies." Reid claimed he used the two girls' monies to care for them, as well as his other four children.

Melissa and Mellonie brought this action, alleging Reid was their appointed guardian when he received their life insurance proceeds from Prudential. They averred Reid, as guardian, breached his fiduciary duty and perpetrated fraud upon them by failing to disclose, protect, and deliver the assets, and such acts on Reid's part were intentional with knowledge of his fiduciary duty. The two women asked for a full accounting from Reid and Prudential, alleging Prudential, too, had failed to account for the life insurance proceeds or to require proof of bond when it paid Reid the proceeds. After a trial and being informed of Melissa's, Mellonie's and Reid's allegations and testimony of what occurred, the chancellor awarded damages to Melissa and Mellonie.

As is set out clearly and succinctly in *A & P's Hole-in-One, Inc. v. Moskop*, 38 Ark. App. 234, 832 S.W.2d 860 (1992), the court of appeals stated that an accounting is an equitable remedy designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due.

As this court said in *Walters-Southland Institute* v. *Walker, Trustee*, 217 Ark. 602, 232 S.W.2d 448 (1950), the existence of a fiduciary relation is one of the well-recognized grounds for equity jurisdiction of a suit for an accounting. An accounting may be had against a fiduciary to determine whether there is, in fact, anything due the plaintiff. Here, Reid, as guardian of Melissa's and Mellonie's estate, was a fiduciary. *Omohundro* v. *Erhart*, 228 Ark. 910, 311 S.W.2d 309 (1958). Consequently, Melissa and Mellonie, as wards and plaintiffs, have every right to ask equity to make Reid and Prudential account for those monies or assets that might be due the women, and chancery courts clearly had the authority to grant such relief.

DONALD L. CORBIN, Justice, dissenting. This dissent focuses on this case to illuminate the ageless determination that probate courts have exclusive jurisdiction of guardianship matters concerning the persons and estates of wards. The chancery court lacked subject-matter jurisdiction of the guardianship matters in this case, and the case therefore should be reversed and dismissed. Moreover, this case illuminates the confusion this court creates when it interprets our antiquated constitutional judicial article and attempts to blend its separation of jurisdiction of trial courts into circuit, chancery, probate, juvenile, and various combinations thereof. While I agree with the majority, based on the cases cited therein, that chancery courts have jurisdiction of matters concerning trust, fraud, and accountings and fiduciaries *other than those relating to guardianships*, I do not agree that the chancery court has jurisdiction of such issues or claims when they concern guardianships.

This court has recently addressed the issue of a chancery court's lack of jurisdiction over guardianship matters in *Dent* v. *Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995), where we

affirmed in part a chancery court's rulings on issues of fraud and constructive trust, but reversed and dismissed in part, for lack of subject-matter jurisdiction, the chancellor's appointment of a guardian. There, we explained the subject-matter jurisdiction relationship between chancery and probate courts as follows:

> Jurisdiction of the probate court over all matters of guardianship, other than guardianships ad litem in other courts, *is exclusive.* Ark. Const. art. 7, § 34; Ark. Code Ann. § 28-65-107(a) (1987) (emphasis added). The section of the Arkansas Constitution that is now Article 7, section 34, did not consolidate the chancery and probate courts, and, while the judge of the chancery court is also the judge of the probate court, the judge conducts each court separately. *Wooten* v. *Penuel*, 200 Ark. 353, 140 S.W.2d 108 (1940). The section does not permit courts of chancery to lift matters over which the probate court has exclusive jurisdiction out of probate courts and apply equitable principles in disposing of controversies cognizable only in probate. *Id.* at 357-58, 140 S.W.2d at 111; *see also Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976) ("probate courts are vested with exclusive jurisdiction in matters relative to . . . guardians. . . ."); *Thompson* v. *Dunlap*, 244 Ark. 178, 424 S.W.2d 360 (1968) (holding that chancery and probate courts are separate tribunals, each having [its] own jurisdiction and that a chancery court cannot "inherit jurisdiction" from the probate court in same county); *Janssen* v. *Blissenbach*, 210 Ark. 22, 193 S.W.2d 814 (1946) (stating that the two courts are wholly distinct and operate independently of one another and that [the] trial court, sitting as chancery in that case, correctly did not pass on questions reserved for probate).

*Dent*, 322 Ark. at 265-66, 909 S.W.2d at 307.

Subject-matter jurisdiction is determined from the pleadings. *Union Pac. R.R. Co.* v. *State ex rel. Faulkner*, 316 Ark. 609, 873 S.W.2d 805 (1994). In this case, the complaint was for an accounting and judgment. As against Reid, appellees alleged that he breached his fiduciary duty and committed fraud. As against appellant, appellees alleged that appellant negligently

paid the proceeds to Reid by failing to verify Reid's authority to collect the proceeds and by failing to require proof of bond. As against both appellant and Reid, appellees requested an accounting of and judgment for the proceeds. Thus, the critical and threshold issues were whether appellant paid the proceeds to Reid as the duly qualified, appointed, and serving guardian, and the accounting of the proceeds. Such determinations can only be made by the probate court — the court that is given exclusive original jurisdiction of guardianship matters. Ark. Const. art. 7, § 34; Ark. Code Ann. § 28-65-107(a) (1987); *Dent*, 322 Ark. 256, 909 S.W.2d 302. There can be no cause of action for fraud, breach of fiduciary duty, or negligence until the probate court has entered a ruling on the accounting and judgment for deficiency of the proceeds. Thus, while the pleadings raise tort issues that are cognizable in chancery court, the threshold issues of whether appellant properly paid the proceeds to Reid as the duly qualified, appointed, and serving guardian of appellees' persons and estates, and the accounting of the funds in appellees' guardianship estates are not cognizable in chancery court. The chancery court was not permitted to lift the guardianship matter from the probate court's exclusive jurisdiction. *Id.*

The majority opinion contributes to the jurisdictional confusion by concluding that the chancery court has jurisdiction of this case, without overruling *Dent*.

The majority opinion illustrates the problems courts face and compound when they erroneously exercise subject-matter jurisdiction by referring to Reid as appellees' "former" guardian. Such a reference assumes facts not in the record. Under current law, a guardianship of the estate of a ward based solely on the ward's minority does not terminate automatically upon the ward's attainment of majority. *See generally* Ark. Code Ann. § 28-65-401 (Supp. 1995). There is nothing in this record to show that the probate court has approved a final accounting of the appellees' accounts as wards and terminated Reid's guardianship. An accounting of a ward's account and termination of a guardianship are matters that lie exclusively in probate court. Section 28-65-107.

The majority's assumption that Reid is the "former" guardian magnifies the lack of chancery's subject-matter jurisdiction in

this case. Moreover, it demonstrates that the chancery court assumed jurisdiction of this case too soon. The chancellor should have transferred the case to probate, settled the accounting, and determined whether Reid was the duly qualified, appointed, and acting guardian. Once those determinations were made by the probate court, the chancellor could then have exercised jurisdiction of the fraud and negligence claims. *See, 65th Center, Inc.* v. *Copeland,* 308 Ark. 456, 825 S.W.2d 574 (1992); *In Re Morgan,* 310 Ark. 220, 833 S.W.2d 776 (1992); *Forehand* v. *American Collection Serv., Inc.,* 307 Ark. 342, 819 S.W.2d 282 (1991).

DUDLEY and NEWBERN, JJ., join in this dissent.