Levern JOHNSON *v.*
GUARDIANSHIP OF Rachael Renea RATCLIFF

CA 00-80                                    34 S.W.3d 749

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 13, 2000

*Hugh L. Brown*, for appellant.

*Bachelor, Newell & Oliver*, by: *C. Burt Newell*, for appellee.

JOHN E. JENNINGS, Judge. This is an appeal from an order awarding a fee to an attorney hired by a guardian to represent the interests of the guardian's ward, a minor child. For reversal of that order, appellant argues that the guardian did not have the authority to enter into a binding contract for legal services; that the probate court erred in awarding the attorney's fee from the proceeds of a wrongful-death action; and that the fee was excessive. We affirm.

On July 5, 1998, Gwenda Johnson died in a car accident. Her daughter, Rachael Renea Ratcliff, then age two, was also injured, as were other passengers in Ms. Johnson's vehicle. Willie Ray Ratcliff, Rachael's putative father, took custody of her and obtained a temporary order of guardianship from the Garland County Probate Court on July 21, 1998. On July 23, 1998, Mr. Ratcliff, as the guardian for the child, entered into a contingency-fee contract with attorney Burt Newell for representation in connection with the child's claims arising from the car accident.

Gwenda Johnson was also survived by her parents and numerous siblings. Appellant Levern Johnson, her sister, was appointed the administratrix of her estate by the Pulaski County Probate Court. With the court's permission, the estate intervened in a lawsuit in Pulaski County Circuit Court brought by the estates of the deceased and the injured passengers who were riding in

Gwenda Johnson's vehicle. Mr. Ratcliff, as guardian, also intervened to present a claim on behalf of the child because of her injuries. With $115,000.00 in insurance monies, the plaintiffs settled the tort case. The estate of Gwenda Johnson received $38,000.00 for her wrongful death. Rachael was allotted $2,000.00 for her personal injuries.

The parents and siblings of Gwenda Johnson disclaimed any interest in the settlement proceeds. Out of the fund, the attorney for the estate received a fee of $1,500.00 and costs of $62.45. Appellant, as administratrix, was paid $200.00 for her out-of-pocket expenses. As sanctioned by court order, the balance of the money, $36,237.55, was placed into the registry of the Garland County Probate Court for Rachael's benefit. Burt Newell then petitioned the Garland County Probate Court for the payment of his attorney's fee based on the contract entered into with Mr. Ratcliff, the guardian. Appellant filed an objection to this fee request. After a hearing, the probate judge upheld the contingent-fee contract and awarded Mr. Newell the sum of $12,258.22 out of the ward's estate.

The crux of this appeal is appellant's argument that the proceeds from a wrongful-death action are exempt from the claims of attorneys who represent individual beneficiaries of the decedent's estate, and she argues that the probate court erred by awarding the fee out of the ward's estate. She relies on the decision in *Brewer v. Lacefield,* 301 Ark. 358, 784 S.W.2d 156 (1990), as support for her argument. We do not agree that *Brewer* holds that a ward's attorney may never be compensated out of funds held by a guardian that are attributable to a wrongful-death settlement.

In *Brewer,* the deceased was survived by three heirs: his widow, and two children from a former marriage. The widow was appointed administratrix of the deceased's estate, and she hired two attorneys to pursue a wrongful-death action. The children's mother also hired two attorneys to represent their interests in the lawsuit. The attorneys on each side had contingent-fee contracts to receive one-third of the proceeds from the action. From the proceeds available for distribution, the administratrix proposed that the attorneys for the estate receive one-third of the total as their fee, with the remainder, after deducting other expenses, to be divided equally between her and the two children. The children's mother objected to this plan because it made no provision for the payment of fees to

the children's attorneys. She contended that the children's attorneys should be paid out of the funds to be distributed to them and that the attorneys for the estate should receive their contingent fee only out of the sum recovered by the administratrix. The trial court rejected this plan and entered an order in accordance with the proposal made by the administratrix.

In affirming, the supreme court held that a probate court has no jurisdiction to award attorneys' fees for services rendered to individual beneficiaries of a wrongful-death action. The court based its decision on the provisions of the wrongful-death code and the case law interpreting it that it is the duty of the personal representative, not the beneficiaries, to choose counsel to pursue a wrongful-death claim. Contrary to appellant's assertion here, the court did not hold that the proceeds from a wrongful-death action were of a special class exempt from the claims of attorneys who represent the individual beneficiaries. The court merely held that the attorneys for individual beneficiaries were not entitled to consideration when the proceeds from a wrongful-death action are being distributed. As the court said, "the beneficiaries are free to select counsel to see that their interests are protected, however, *they must bear this expense.*" *Id.* at 363 (emphasis supplied). Here, an attorney was employed to represent the interests of the ward. The trial court's decision to approve a fee payable from the ward's estate is not inconsistent with the supreme court's decision in *Brewer*.

Appellant also argues that the fee contract was invalid because Ark. Code Ann. § 28-65-301(a)(3) (1987) provides that a guardian of the person does not have the power to bind the ward or his property, and the guardian in this instance was only the guardian of the minor's person when the contract was negotiated. Appellant also points out that the order appointing Mr. Ratcliff as guardian of the person authorized him to engage the services of an attorney but did not expressly approve the fee contract.

Under Ark. Code Ann. § 28-65-319(a)(1) (1987), a guardian is specifically authorized to employ legal counsel in connection with the discharge of his duties. Moreover, the hiring of an attorney is not listed among those decisions made by a guardian that always requires prior court approval as provided in Ark. Code Ann. § 28-65-302 (Supp. 1999). Even if the guardian acted precipitously, he was subsequently made the guardian of the child's estate, and he

has taken no action to disavow the fee contract but has since reaffirmed it in every respect.

■ Arkansas Code Annotated section 28-65-319(a)(1) further provides that the court shall fix the fee of the attorney hired by a guardian and that the fee shall be allowed as an item of the expense of administration. The probate court, after a hearing, did review the actions of the guardian and approved them, and in the exercise of its superintending control, the court set the fee. We are therefore not persuaded that the decision must be reversed on this basis.

Appellant's final argument is that the fee awarded to Mr. Newell was excessive. She argues that Mr. Newell did little work on the case and that his claim of one-third of the monies is unconscionable.

Mr. Newell testified that he appeared on behalf of the child in four different courts. In addition, he opened the guardianship and also prepared pleadings connected with the intervention in the tort case. He said that he had monitored the criminal prosecution against the tortfeasor by sitting in court both when she was arraigned and when she entered a guilty plea to a charge of negligent homicide. He also said that he researched the possibility of bringing the tortfeasor's business into the wrongful-death suit. Mr. Newell testified that he coordinated all of the insurance benefits from the accident and that he played an active role in negotiating the terms of the settlement, which he considered favorable. He said that, had the tort case gone to trial, he was prepared to put on proof as to how the child had suffered because of the loss of her mother.

■ ■ In determining what is a reasonable fee, it is proper to consider the amount and character of the services rendered, the labor, time, and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys. *Jones v. Barnett,* 236 Ark. 117, 365 S.W.2d 241 (1963). The probate court was in a position to assess the value of counsel's service to the estate and to properly determine the amount of fees to which counsel should be entitled. *See Winters v. Winters,* 24 Ark. App. 29, 747 S.W.2d 583 (1988). We find no error.

Affirmed.

ROBBINS, C.J., HART and MEADS, JJ., agree.

GRIFFEN and CRABTREE, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent from the decision to affirm the chancellor's decision allowing an attorney's fee to the lawyer for the guardian of a minor whose mother was killed in a motor vehicle accident based on the amount that the minor received after the personal representative of her mother's estate (appellant) settled a wrongful-death claim. I would reverse the chancellor's decision in light of the supreme court's holding in *Brewer v. Lacefield*, 301 Ark. 358, 784 S.W.2d 156 (1990).

Levern Johnson, appellant, is a sister of Gwenda Johnson, the mother of Rachel Renea Ratcliff, a minor. On or about July 5, 1998, Gwenda Johnson was killed in an automobile accident in Garland County. Rachel Renea Ratcliff was injured in that accident. Willie Ray Ratcliff (Rachel's father) and Gwenda Johnson were not married when the accident occurred. Willie Ray Ratcliff initiated proceedings in Garland County Probate Court to be appointed Rachel's guardian. Meanwhile, Levern Johnson was appointed as the personal representative of the estate of Gwenda Johnson and filed a wrongful-death action on behalf of the estate of Gwenda Johnson. The wrongful-death action culminated in a pre-trial compromise settlement whereby the amount for distribution to Rachel Ratcliff equaled $40,000 ($38,000 payable to her from the Estate of Gwenda Johnson and $2,000 payable for her own personal injuries in the accident).

Willie Ray Ratcliff retained separate legal counsel with the approval of the Garland County Probate Court. After Levern Johnson had concluded the settlement of the wrongful-death action, she petitioned the Garland County Probate Court for permission to deposit $36,237.55 with the registry of that court, representing the net amount for distribution to Rachel Ratcliff after costs of administration had been deducted ($200 for the personal representative as fee for services and $1,562.45 to the attorney for the estate as fee and reimbursement for expenses). The Garland County Probate Court granted an order to that effect. Then Willie Ratcliff petitioned the Garland County Probate Court to approve an attorney's

fee payment to C. Burt Newell, his attorney, and Newell filed his petition seeking payment of $12,079.18 as an attorney's fee, plus $179.04 as costs, pursuant to Newell's agreement with Willie Ratcliff. Levern Johnson objected to the claim for attorney's fees, alleging that the settlement resulted from the efforts of other counsel, not Newell, and that Newell allegedly contributed nothing toward obtaining the funds that were ultimately recovered on behalf of Rachel Ratcliff. The probate court granted Newell's petition for an attorney's fee based on his view that the fee agreement between Newell and the guardian was a valid and enforceable contract that the probate court had authorized the guardian to enter. This appeal followed.

The supreme court held in *Brewer v. Lacefield, supra,* that the attorney for a wrongful-death beneficiary is not entitled to fees from wrongful-death proceeds attributable to the beneficiary and that a probate court has no authority to award attorney's fees for services rendered to an individual beneficiary. In that case, a personal representative had engaged counsel to pursue a wrongful-death action which resulted in $114,630.46 being available for distribution. From that amount, the personal representative (widow of the decedent) proposed that her counsel be reimbursed for litigation expenses ($1,916.87) and be paid a fee pursuant to their contingent fee contract ($37,567.45). *See id.* Independent counsel engaged by the decedent's former wife to represent the children of the decedent filed a separate petition for distribution and objected to the personal representative's petition because it made no allowance for attorney's fees to be paid to the children's independent counsel. The probate court entered an order of distribution as proposed by the personal representative, and the former wife of the decedent (Debra Brewer) appealed. *See id.*

The supreme court affirmed that part of the probate court's decision approving the distribution proposed by the personal representative. Chief Justice Holt, writing for the court, emphasized that Ark. Code Ann. § 16-62-102(b) provides that every wrongful-death action shall be brought by and in the name of the personal representative of the decedent, or by the heirs at law if there is no personal representative, and that the wrongful-death code provisions do not create an individual right in any beneficiary to bring suit. *See id.* (citing *Cude v. Cude,* 286 Ark. 383, 691 S.W.2d 866 (1985)). In bringing the wrongful-death action, the personal repre-

sentative only acts as a trustee of conduit, and any proceeds recovered are for the benefit of the beneficiaries and not for the estate. *Dukes v. Dukes*, 233 Ark. 850, 349 S.W.2d 339 (1961). Observing that *Cude* concluded with dicta that a beneficiary may have her own counsel in a wrongful-death case to protect her interests and that the court had declined to address whether such counsel would be entitled to fees on a portion of the recovery (because that issue had not been raised in *Cude*), Chief Justice Holt wrote in *Brewer v. Lacefield*:

> Granted, the beneficiaries may prefer to have independent counsel to protect their interests. However, as long as our code provisions provide that the personal representative is the party to bring the action, that party has the absolute right to choose counsel for that purpose. Should the personal representative or chosen counsel fail to provide adequate representation, application can be made to the probate court to either not approve or disallow the contracts entered into by the representative. In fact, a representative can even be removed if the court finds him or her unsuitable. Ark. Code Ann. 28-48-105 (1987).

> *In sum, the beneficiaries are free to select counsel to see that their interests are protected, however, they must bear this expense.*

301 Ark. 363, 784 S.W.2d at 159 (emphasis added).

I see no reason to depart from the *Brewer v. Lacefield* holding merely because the attorney for the beneficiary in this case waited until after the personal representative distributed the amount due the beneficiary to petition the court for attorney's fees. Stated differently, the probate code should not be circumvented by allowing beneficiaries to do indirectly what the probate code and the *Brewer v. Lacefield* holding prohibits them from doing directly.

The record contains no proof that Levern Johnson or the counsel she selected failed to provide adequate representation, nor is there even a suggestion that the guardian of Rachel Rene Ratcliff intimated that the contracts entered into by Levern Johnson with her attorney to settle the wrongful-death action should have been disapproved or disallowed. The probate court's decision to authorize the guardian to retain separate counsel to represent the minor's interest did not amount to a declaration that the personal representative was inadequate. His conclusion that the contract between the guardian and C. Burt Newell was valid and enforceable does not

mean that proceeds recovered for the guardian's ward by the only person legally authorized to represent her in the wrongful-death action are attributable to any effort by Newell.

To the contrary, the record shows that Newell was representing the guardian for a beneficiary whose interest in the wrongful-death action was ably and effectively represented by counsel chosen by the personal representative. If Newell is due a fee, the money should come from the guardian's pocket, not from proceeds recovered for the beneficiary by the personal representative.

The attorney's fee awarded to Newell by the probate court amounts to a third of the amount recovered by the personal representative. The majority opinion refers to Newell's appearances in four different courts. The record does not show that he was involved in any way with the criminal prosecution against Sally Wells, the tortfeasor in the wrongful-death case. He certainly was not engaged as a private prosecutor. There is no proof that he helped the prosecution do anything. While he testified that Wells eventually pled guilty to negligent homicide and that none of the family members from Little Rock appeared at any of the Garland County Circuit Court proceedings related to the prosecution, there is no proof that Newell was anything other than a courtroom spectator.

Further, Newell's involvement in chancery court proceedings related to a dispute between appellee and Rachel's grandparents concerning visitation show that he was really representing appellee's separate interest, not the interest of Rachel. The majority opinion does not explain why the child should bear the expense of that visitation dispute, and appellee has cited no authority for shifting the expense from appellee to her.

The attorney's fee issue highlights the great evil posed by the result reached today. Rachel Ratcliff's legal interests were fully and adequately represented by appellant. That representation resulted in a settlement favoring Rachel. Now the lawyer for Rachel's father will take a third of her recovery because he negotiated an agreement with appellee to provide representation that can charitably be best characterized as duplicative. A less flattering appraisal of that representation would deem it unnecessary and self-serving.

I see no reason to provide judicial encouragement and approval of duplicative, unnecessary, or self-serving lawyering at the expense of this child. By merely hiring a lawyer, Willie Ratcliff now controls two-thirds of his daughter's inheritance from her mother; his lawyer now takes the other third. It is predictable that other lawyers will be encouraged to enter into similar arrangements. Such arrangements are full of opportunities for collusion between wrongful-death beneficiaries and lawyers who do not represent the personal representatives, but who are emboldened by the prospect of taking a third of a wrongful-death recovery they did not work to obtain. We should not sanction such dealings in the name of equity.

For the foregoing reasons, I respectfully dissent and would reverse the decision of the chancellor. Judge CRABTREE has authorized me to state that he joins this opinion.