Donna BAILEY *v.* Barbara RAHE

02-1316                                                    142 S.W.3d 634

Supreme Court of Arkansas
Opinion delivered January 22, 2004

*Caldwell Law Office*, by: *Theresa L. Caldwell*, for appellant.

*J. Fred Hart Jr.*, for appellee.

Tom Glaze, Justice. This guardianship case, involving an attorney's fees issue, was certified to us by the court of appeals under Ark. Sup. Ct. R. 1-2(a)(5); however, we accept the appeal pursuant to Ark. Sup. Ct. R. 1-2(b). We reverse and remand the case for further proceedings.

The ward in this matter is Bernita Yvonne Logan, a seventy-six-year-old woman who suffers from vascular dementia. On April 24, 2001, Donna Bailey, Logan's adopted daughter, filed a petition to be appointed guardian of Logan's person and estate. Bailey requested an emergency hearing, alleging a "certain person" had attempted to obtain Logan's money and assets when Logan was discharged from the hospital. The trial court appointed Bailey temporary guardian, but provided the guardianship would expire

on May 31, 2001, at which time a hearing would be held to determine if the guardianship should be continued. The trial court also appointed an attorney ad litem for Logan.

On May 22, 2001, Barbara Rahe, Logan's niece, who lives in California, contested the temporary guardianship and Bailey's appointment. Rahe claimed that Bailey had sequestered Logan so that Rahe was unable to determine if a guardian was necessary, but, if one was required, Bailey should not be the guardian. Rahe averred that, on September 22, 2000, Logan named Rahe executrix of her will and bequeathed only $1.00 to Bailey.

On May 31, 2001, a hearing was held before a special judge who later approved a final order continuing Bailey as guardian. Because Rahe had voiced concerns about Bailey's handling of Logan's estate, the judge, instead of requiring a bond, imposed a number of additional obligations on Bailey as guardian, other than those prescribed by statute. For example, Bailey was required to *account for all spending* of Logan's money *every sixty days and provide a copy of the accounting to the parties' attorneys*. The order also required all monies be placed in a guardianship secured by FDIC insurance and to provide proof of having done so to the attorneys. In the judge's order, Bailey was to prepare an inventory showing the ward's assets, from where those assets or properties were derived, and the location of each.

The trial judge further directed that all expenditures within ninety days from the order were to be approved by the attorney ad litem, Patricia James, who was instructed to determine the reasonable amount of monthly expenditures for Logan's expected needs. Any expenditures over that amount established by Ms. James required the court's approval. In this respect, the court's order emphasized that every item required an *accounting, receipts,* and *accurate recordings*, and the ward's estate was directed to pay the ad litem's costs and her attorney's fee, which was authorized at the hourly rate of $145.00.

In November 2001, Logan was admitted into a nursing home, and Bailey sought permission to transfer money from Logan's certificates of deposit to pay for Logan's nursing home care. Although Rahe and the ad litem did not object, the trial court set a hearing on May 6, 2002, to consider Bailey's request. At that hearing, Bailey withdrew as guardian of the estate, and the trial court appointed the Bank of the Ozarks to handle the estate. Bailey

remained Logan's personal guardian. The court directed Bailey to file a final accounting and transfer Logan's estate assets to the Bank for management.

Bailey submitted a final accounting on June 7, 2002, and, on June 10, 2002, she sought an order authorizing payment of $10,924.35 to her attorney, Theresa Caldwell. Caldwell submitted an itemized bill, covering the period from April 17, 2001, when she was first employed, through June 7, 2002, when she filed Bailey's final accounting. The trial court approved only $6,200 in fees and provided that Bailey was responsible for the difference. The trial judge specifically disallowed all fees and costs that were incurred from April 17, 2001, to the May 31, 2001, hearing when Bailey was appointed temporary and permanent guardian of Logan's person and estate. Bailey brings this appeal, contending the trial court acted arbitrarily in reducing Caldwell's fees.

When addressing a trial court's award of attorney's fees, this court has often observed that there is no fixed formula in determining what is reasonable. *See South Beach Beverage Co., Inc. v. Harris Brands, Inc.*, 355 Ark. 347, 138 S.W.3d 102 (2003); *Phi Kappa Tau Housing Corp. v. Wengert*, 350 Ark. 335, 86 S.W.3d 856 (2002); *see also Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). This court has, however, held that a trial court should be guided in that determination by the following long-recognized factors:

> (1) the experience and ability of counsel; (2) the time and labor required to perform the legal service properly; (3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

*South Beach Beverage Co., Inc., supra*, 355 Ark. at 356; *see also Wengert*, 350 Ark. at 341. In the context of guardianship cases, this court held in *Jones v. Barnett*, 236 Ark. 117, 365 S.W.2d 241 (1963), that there are "many factors, in addition to that of hours spent, to be considered in

the problem of fixing a just and adequate fee for an attorney in any specific case." *Jones*, 236 Ark. at 123. These factors which, it should be noted, are consistent with the *Chrisco* factors, are as follows:

> the amount and character of the services rendered, the labor, time, and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys.

*Id.; see also Johnson v. Guardianship of Ratcliff*, 72 Ark. App. 85, 34 S.W.3d 749 (2000) (guardianship case reciting and applying factors set out in *Jones*). Although the *Jones* case clearly predates our holding in *Chrisco*, the factors enumerated are substantially similar. Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.* Accordingly, the amount of the award will be reversed only if the appellant can demonstrate that the trial court abused its discretion.[1] *Id.*

In the present case, the guardian, Bailey, was authorized to employ an attorney in connection with the discharge of her duties, and the court was to fix the attorney's fees, which would be allowed as an item of the expense of administration. *See* Ark. Code Ann. § 28-65-319(a)(1) (1987). Here, Bailey first argues that the trial court erred when it reduced Caldwell's fees from the requested amount of $10,924.35 to $6,200.00. The trial court reduced Caldwell's fees by lowering her hourly rate from $150 to $125 and disallowing all fees incurred prior to May 31, 2001. The court reasoned that Caldwell delayed submitting her statement for such a large amount, when the court's practice was to rule on fee

---

[1] To the extent the dissent suggests that we are abandoning the abuse-of-discretion standard in attorney's fees cases, we emphatically deny such an accusation. A trial court abuses its discretion when it makes a decision that is arbitrary or groundless. *See Gray v. Gray*, 352 Ark. 442, 101 S.W.3d 816 (2003). A decision is arbitrary when it is a "decisive but unreasoned action." *See City of Little Rock v. Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994). As is discussed below, the trial court gave no explanation for lowering attorney Caldwell's fee from $150 to $125 an hour, nor did the court explain why it cut off fees incurred prior to May 31, 2001. Such "decisive but unreasoned action" clearly constitutes an abuse of discretion.

requests "at each guardianship hearing."[2] The court also stated that Bailey should have taken on more responsibility for preparing the accountings required by the court's order, but instead relied too much on Caldwell's preparing the accountings, thereby "running up" the fees.

Bailey first questions the trial court's lowering Caldwell's $150 hourly rate to $125, and notes that she offered two affidavits supporting her hourly rate. Ann Morris, Trust Officer of the Bank of the Ozarks, averred that she had reviewed hundreds of attorney's fee petitions in guardianship estates, and Caldwell's $150 per hour fee was "eminently reasonable in comparison to the amount charged by other attorneys for the same services." Bailey also submitted Caldwell's affidavit, which set out her considerable experience in handling guardianships and detailed the various duties and responsibilities that must be performed. Caldwell added that she utilized the least expensive options when choices regarding accountings and inventories were available. Here, Caldwell says she asked that a bond to secure the guardian's performance be issued, and she also sought approval of orders by Rahe's attorney and the attorney ad litem, so as to avoid hearings and additional attorney's fees, when possible. Caldwell asserted that her $150-per-hour fee was reasonable in light of her experience and knowledge of the guardianship issues, and that the rate was in line with what other attorneys charge. She added that the rate also was in line with the $145 per hour authorized by the trial court for the attorney ad litem in the case.

Bailey further submits that the trial court offered no valid reason for denying Caldwell's fees incurred for all services performed prior to the contested guardianship hearing held on May 31, 2001. The trial judge merely reiterated that such "services were performed so far back in time," while the judge's practice is ordinarily to take up fee questions "at each guardianship hearing."[3] The judge offered no citation of authority for that proposition, or

---

[2] The trial court stated that there was a rule that attorney's fees must be asked for within ten days. The court was apparently referring to Ark. R. Civ. P. 54(c)(2), which actually provides that attorney fee requests must be filed within fourteen days after entry of judgment. The trial court did not cite authority providing that Rule 54(c)(2) applied in probate matters, which require periodic services and hearings.

[3] Bailey argues that the trial court's practice amounts to a "local rule" which has been abolished. See In re: Abolished Local Rules, 294 Ark. 663, 740 S.W.2d LXII (1987); In re: Local

why the judge could not determine what fees would be reasonable merely because they were not submitted after each hearing.

Although we have reviewed the trial court's remarks regarding its decision to reduce Caldwell's fees to be paid by the estate, we are unable to discern exactly on what basis it did so. Clearly, the trial court did not consider or allude to either the *Jones* factors or the *Chrisco* factors set out above and followed in the recent cases of *South Beach, supra,* and *Wengert, supra.* It is especially difficult to understand under what authority the trial court ruled that no fees were to be paid to Caldwell for the legal services she provided prior to May 31, 2001, when only about two hours of the attorney's time dealt with the required accountings. Moreover, while the trial court was concerned with the accounting responsibilities that Caldwell assumed, it was the trial court itself that established the more onerous accounting requirements, and, even if Bailey should have done more work in this connection, attorney Caldwell certainly had the duty to insure those accountings and inventories were accurate, considering the added responsibilities given Bailey as guardian.

■ Because the trial court failed to consider the *Chrisco* factors when awarding the attorney's fees in this case, we reverse and remand for the trial court to make such an analysis. *South Beach Beverage Co., Inc., supra; see also Lake View Sch. Dist. No. 25 v. Huckabee,* 351 Ark. 31, 91 S.W.3d 472 (2002).

HANNAH, J., dissents.

JIM HANNAH, Justice, dissenting. I must respectfully dissent. The *Chrisco* factors are not applicable in determining attorney's fees in a guardianship case because the *Chrisco* factors fail to take into account the very purpose of a guardianship, which is the protection of the ward. As a consequence of this error by the majority, the modest estate of the nearly eighty-year-old widow Bernita Logan will be used first, to pay for attorney's fees that were incurred because of unjustified actions of the guardian that were not undertaken for the benefit of Ms. Logan, second to pay for the hearing that is the subject

---

*Administrative Rules,* 299 Ark. 335, 772 S.W.2d 600 (1989). However, Bailey failed to make this argument below, and therefore, it is not preserved for appeal. *See Hale v. State,* 343 Ark. 62, 31 S.W.3d 850 (2000).

of this appeal, and now to pay for yet another hearing. The only persons who will benefit from the present proceedings are the guardian and her attorney.

The *Chrisco* factors are patently inapplicable in a guardianship proceeding. Ms. Logan's estate should be used to pay for her welfare, including the nursing care she is receiving and will likely need for the remainder of her life. Under the guardianship statutes, the focus of a decision on attorney's fees is whether the work done was a necessary legal service for the benefit of the ward. The sole purpose of a guardianship is to protect the ward of the guardianship. By failing to recognize the purpose of a guardianship proceeding, the majority is thwarting the intent of guardianship law and allowing the value of Ms. Logan's estate to be inappropriately reduced. The statutorily-declared goal of guardianship law was clearly stated by the trial judge and correctly applied.

The oft-repeated rule is that attorney's fees are not allowed except where expressly provided for by statute. *Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The majority cites *Chrisco, supra,* and *Phi Kappa Tau Corp. v. Wengert,* 350 Ark. 335, 86 S.W.3d 856 (2002), where fees were allowed under Ark. Code Ann. § 16-22-308 (Repl. 1999), based on contract disputes. The majority also cites *South Beach Beverage Co. v. Harris Brands, Inc.* , 355 Ark. 347, 138 S.W.3d 102 (2003), where fees were allowed under Ark. Code Ann. § 4-72-208 (Repl. 2001) when a franchisee was injured by unlawful conduct in the context of the sale or transfer of franchises. In *South Beach Beverage, supra,* the court relied on *Lake View Sch. Dist. No. 25 v. Huckabee,* 351 Ark. 31, 91 S.W.3d 472 (2002), wherein this court stated that eight factors could be gleaned from *Chrisco, supra,* to determine proper attorney's fees.

The genesis of the majority's error lies in *Lake View, supra.* While in my concurrence in *Lake View, supra,* I stated that I concurred that attorney's fees had to be granted, I so stated because in *Lake View Sch. Dist. No. 25 v. Huckabee,* 340 Ark. 481, 10 S.W.3d 892 (2000) (hereinafter referred to as *Lake View II),* this court declared that fees would be granted. I disagree with the analysis in *Lake View* II. The analysis on attorney's fees was in error in *Lake View II* and an improper departure from our longstanding law on attorney's fees. In the absence of statutory authority, attorney's fees are not available. *See Chrisco, supra; Harper v. Wheatley Implement Co., Inc.,* 278 Ark. 27, 643 S.W.2d 537 (1982); *Romer v. Leyner,* 224 Ark. 884, 277 S.W.2d 66 (1955). The *Lake View II* decision

implied that the *Chrisco* factors are generally applicable to all cases in an attempt to justify a grant of fees in a case where fees should have been denied based on precedent and public policy.

Attorney's fees are statutorily allowed in guardianship cases under Ark. Code Ann. § 28-65-319 (1987), which provides that a guardian may employ legal counsel, but that "the court shall fix the attorney's fee. . . ."[1] Nothing in this code section mentions the *Chrisco* factors, but instead the statute refers to "necessary legal services." The trial judge asked the correct question: "How much money did she save by spending $10,000.00?" The trial judge was deciding whether necessary legal services were provided for the benefit of Ms. Logan. It is readily apparent that from the transcript the trial judge was complying with the attorney's fees provisions for guardianships under the probate code.

The cases cited by the majority involve plaintiffs and defendants seeking to have their dispute reduced to a judgment. In the cited cases, there was a winner and a loser. A guardianship proceeding is not such a case. At issue in a guardianship is the welfare of the ward. A guardianship proceeding is "used only as necessary to promote and protect the well-being of the person and his property. . . ." Ark. Code Ann. § 28-65-105 (1987). The sole purpose of a guardianship is to further the well-being of the ward. *Omohundro v. Erhart*, 228 Ark. 910, 311 S.W.2d 309 (1958). A guardian acts as a fiduciary. *Prudential Ins. Co. v. Frazier*, 323 Ark. 311, 914 S.W.2d 296 (1996); *Omohundro, supra.*

Exclusive jurisdiction of guardianships lies in probate court. *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995). This is so

---

[1] The majority cites the guardianship case of *Jones v. Barnett*, 236 Ark. 117, 365 S.W.2d 241 (1963), for the proposition that the requirements set out in *Jones* were similar to the *Chrisco* factors. However, there is a substantial difference between the factors set out in *Chrisco* and what this court required in *Jones*. This court in *Jones* quoted Ark. Stat. Ann. § 57-641 (1962), which provided for payment of services lawfully rendered "to the ward or his estate." *Jones*, 236 Ark. at 121; Ark. Stat. Ann. § 57-641. Further, in *Jones* this court noted that an important factor to consider was the ability of the estate to pay the fees. In *Jones*, this court required that the fees granted benefit the ward. In the case before us, the trial court was correctly determining whether the work rendered benefitted Ms. Logan. The trial court specifically asked what benefits Ms. Logan received from the services provided. The focus in a guardianship case must be first and foremost on whether the work benefitted the ward. If the services rendered do not benefit the ward, then the trial court need not even reach the issues raised by the factors gleaned from *Chrisco*.

because of the unique circumstances involved in guardianships. An award of attorney's fees in a guardianship case obviously impacts the value of the estate which reduces the funds available to provide necessary services to the ward. The money at issue in this case will either be used to pay for a widow's care in a nursing home or to pay an attorney. The trial judge understood her duty and correctly decided that all the fees incurred were not necessary for Ms. Logan's welfare. This is evidenced by her comments:

> I can't let the lawyers milk the estate in this case. The Ward can't speak for herself and all of this might not be in her best interest, but we're not going to keep spending her money on attorneys' fees.
>
> I read over the file, and the special judge had some reservations about your client being the guardian and these precautions were put in place.
>
> You filed your motion for attorneys' fees, and I determined that a hearing needed to be set. When I saw the amount that you were requesting, I had to have a hearing on that.
>
> When you're asking for $10,000, nobody is authorizing a guardian to go out and hire a lawyer to run up a $10,000.00 bill.
>
> This file is too thick to be a 2001 case. There's too much going on in here, and the Ward's money is going to all be gone. You're going to run through it fighting. *She needs to be taken care of, that's paramount.*
>
> Because what I am considering doing is bringing in an attorney *ad litem* in this case and instructing the *ad litem* as a go-between between the two of you, and were not going to run up fees like this because guess who's going to pay the fees? It doesn't make any sense for the Ward to spend $10,000 to take care of what? How much money did she save by spending $10,000? We are not going to run up fees in this case.

(Emphasis added.)

These core concerns expressed by the trial judge and set out in the statutes are not even mentioned in the *Chrisco* factors or by the majority. The *Chrisco* factors are:

1. Experience and ability of counsel;

2. Time and labor required to perform the legal service properly;

3. The amount involved in the case and the results obtained;

4. The novelty and difficulty of the issues involved;

5. The fee customarily charged in the locality for similar services;

6. Whether the fee is fixed or contingent;

7. The time limitation imposed on the client in the circumstances;

8. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

*South Beach Beverage Co., supra.* When this case is returned to the trial court, the judge must consider whether the fee is fixed or contingent, whether there were time limitations, and whether the employment precluded other employment. How are these factors relevant to the issues in a guardianship? At the same time, under the majority's decision, the trial court need not even address the requirements set out in Ark. Code Ann. § 28-65-319. The issue before the trial court was and should be whether the attorney's fees were necessary for the ward's benefit, not whether the attorney's fees benefit the guardian. In other words, just as the trial court did in this case, attorney's fees may be granted where the work done was necessary for the welfare of the ward, but not where the work done was for the benefit of the guardian or the guardian's attorney. Thus, it is apparent that the *Chrisco* factors may not be thoughtlessly applied to a guardianship proceeding.

Further, I dissent because the majority not only misapplies the *Chrisco* factors in a guardianship proceeding in this case, but also because the majority sets out a new rule that trial courts and counsel ought to note. The standard of review of a decision on attorney's fees is no longer abuse of discretion. According to the majority opinion, where an attorney complains that the fees granted were too low, and a trial judge failed to specifically state on the record that the *Chrisco* factors were considered in determining attorney's fees, the decision of the trial judge will be summarily

reversed. The trial court must now consider the *Chrisco* factors on its own motion and will be reversed if it fails to do so, even if neither party asked the court to rule on the issue. This is new law indeed. This new rule is a pretty good deal for attorneys seeking fees, but it is a pretty bad deal for incapacitated persons the law ought to protect.

The majority might also wish to note that there were valid reasons for the trial court's concerns about whether Ms. Logan was being protected. There had been a previous dispute in which guardian Bailey returned the following estate property in exchange for a release:

1. $115,459.57 in cash;

2. Titles to two cars;

3. Tax documents;

4. Deed to the house;

5. Jewelry receipts;

6. Birth certificates and a marriage license;

7. Wills; and

8. Funeral home papers.

Even though it is evident that the trial court was clearly protecting Ms. Logan and her estate so that she could be cared for, the majority nonetheless states:

> Although we reviewed the trial court's remarks regarding its decision to reduce Caldwell's fees to be paid by the estate, we are unable to discern exactly on what basis it did so.

It is crystal clear to me that the trial court was looking out for Ms. Logan in trying to determine whether the fees billed by Caldwell were for necessary legal services under the guardianship statutes. The majority ignores this and states that although it recognizes the trial court's remarks, "[c]learly, the trial court did not consider or allude to the *Chrisco* factors set out above and followed in the recent cases of *South Beach, supra,* and *Wengert,*

*supra.*" The majority then states that "[b]ecause the trial court failed to consider the *Chrisco* factors when awarding the attorney's fees in this case, we reverse and remand for the trial court to make such an analysis." I find nothing in this case that shows that the trial court did or did not consider the *Chrisco* factors. Therefore the majority's decision is based on speculation.

It also appears that the majority is not comfortable with the state of the record. However, for some reason, the majority blames the trial court instead of the litigant. Bailey complains multiple times in her brief that the trial court failed to make specific findings. The assertion by a litigant that a trial court failed to make specific findings should send up a red flag to an appellate court. There are two possible reasons that Bailey did not obtain a sufficient record, neither of which entitle her to review by this court.

First, if Bailey failed to develop the record, she cannot complain on appeal that the judge erred. *Knowlton v. Ward*, 318 Ark. 867, 889 S.W.2d 721 (1994). Second, if Bailey failed to obtain a ruling, she is not entitled to review. *Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002).

Where a record and abstract fail to show why the trial court acted as it did, the issue will not be reached by this court. *Holcombe v. Marts*, 352 Ark. 201, 99 S.W.3d 401 (2003). This has always been the rule until now. Without a record of some form, the court cannot conduct a meaningful review of Bailey's argument. *Id.* This court has repeatedly stated that it is the appellant's burden to produce a record sufficient to support his or her arguments on appeal. *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997); *King v. Younts, Chief of Police*, 278 Ark. 91, 643 S.W.2d 542 (1982); *Armbrust Constr. Co. v. Henry*, 263 Ark. 98, 562 S.W.2d 598 (1978). There is no evidence that Bailey sought more specific findings from the trial court. There is no motion for further findings or explanation by the trial court or a motion under Ark. R. Civ. P. 52 (2002). Even had such a motion been brought there would have to be a ruling before this court could review it. The fault, if any, for the state of the record lies with Bailey. It is a mystery to me why this court is allowing appellate review in this case when so often this court simply affirms on a record where a party failed to obtain a sufficient ruling to allow meaningful review. However, as I already noted, I believe the record is more than sufficient to affirm the trial court's decision. I find no abuse of discretion. This case should be affirmed.